**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| SYSTEMS DEVELOPMENT CORP. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 06-232C |
| v. | ) | (Judge Baskir) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS,**
**OR ALTERNATIVELY, FOR SUMMARY JUDGMENT**

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

OF COUNSEL:

STEPHEN F. PEREIRA
Defense Contracting
Management Agency

JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 616-0341

Attorneys for Defendant

Dated: July 23, 2007

TABLE OF CONTENTS

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. Nature of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I. SDC's Breach Of Contract Claims Must Be Dismissed On Principles of Sovereign Immunity . . . . . . . . . . . . . . . . . . . . . . . . 9

A. SDC May Not Raise Claims In This Court Were Not Presented To The Termination Contracting Officer . . . 10

1. SDC Must Comply With The CDA . . . . . . . . . . . . . 11

B. SDC Cannot Bring An Action For Breach Of Contract Because Of Allegedly Defective Government Provided Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

II. Standard Of Review For Summary Judgment . . . . . . . . . . . 17

III. SDC Has Been Paid All Termination For Convenience Costs To Which It Is Entitled . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV. SDC Cannot Recover For Purportedly Defective Performance Specifications . . . . . . . . . . . . . . . . . . . . . . . . . . 22

If The Claim Is Not Is Not Dismissed, The Government Is Entitled To Judgment In Its Favor Because It Is Undisputed That This Contract Involved Only Performance Specifications, For Which No Warranty Is Implied . . . . . . . . . . . . . . . . . . . . 22

V. SDC's Claim For Breach Of The Covenant Of Fair

Dealing And Cooperation Must Fail Because It Is Premised On The Claim For Defective Specifications . . . . . 23

A. SDC's Claim For Breach Of Covenant Of Fair Dealing And Cooperation Must Be Dismissed . . . . . . . 23

B. If The Claim Is Not Dismissed, The Government 's Entitled To Judgment In Its Favor As A Matter Of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

VI. The Government Is Entitled To Judgment As a Matter Of Law Upon Each of SDC's Contract Allegations . . . . . . . . . 26

A. SDC Cannot Show That The Government Acted In Bad Faith . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

B. The Government Did Not Fail To Disclose Superior Knowledge To SDC . . . . . . . . . . . . . . . . . . . . . 28

1. The Circuit Cards Could Not Be Procured Only From Raytheon . . . . . . . . . . . . . . . . . . . . . . . . . . 29

a. The Government Did Not Disclose That Electronic PROM Data Necessary For Contract Performance Was Not Available . 29

b. MIL-S-13949 Was Cancelled And "Could Not Be Replaced." Amended Complaint 10 ¶ 40-41. . . . . . . . . . . . . . . . . . . . . . . . . . 30

c. One Of The AMCOM Engineers Held The Opinion That The Government Procure The Parts From Raytheon, Rather Than SDC. . 30

VIII. SDC Is Not Entitled To Recover The Settlement Expenses Alleged In Count IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

V. SDC Is Not Entitled To Recover Damages For Lost Business Opportunities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

## TABLE OF AUTHORITIES

### CASES

Aleutian Constr. v. United States,
24 Cl. Ct. 372 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Am-Pro Protective Agency, Inc. v. United States,
281 F.3d 1234 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Bermite Div. of Tasker Indus., ASBCA 18280,
77-1 BCA 12349, aff'd on motion for reconsid.,
77-2 BCA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Blake Constr. Co. v. United States,
987 F.2d 743 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Brookfield Construction Co., Inc. v. United States,
228 Ct. Cl. 551,
661 F.2d 159 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

City of Tacoma, Dept of Public Utilities v. United States,
31 F.3d 1130 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Contract Cleaning Maintenance, Inc. v. United States,
811 F.2d 586 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Cosmic Construction Co. v. United States,
697 F.2d 1389 (Fed. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . 10

Daewoo Eng'g & Constr. Co. v. United States,
73 Fed. Cl.547 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Dynalectron Corp. v. United States,

4 Cl. Ct. 424, aff'd,
758 F.2d 665 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fidelity Construction Co. v. United States,
700 F.2d 1379 (Fed. Cir.), cert. denied,
464 U.S. 826 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

GAF Corp. v. United States,
932 F.2d 947 (Fed. Cir.), cert. denied,
502 U.S. 1971 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 31

Gates v. United States,
33 Fed. Cl. 9 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Hercules, Inc. v. United States,
516 U.S. 417 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Hoffman Construction Co. v. United States,
7 Cl. Ct. 518 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Info. Sys. & Networks Corp.,
ASBCA No. 42659, 00-1 BCA ¶ 30,995 . . . . . . . . . . . . . . . . . . 16, 18

James M. Ellett Construction Co. v. United States,
93 F.3d 1537 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Kalvar Corp. v. United States,
453 F3d 1298 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Library of Congress v. Shaw,
478 U.S. 310 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Lopez v. A.C. & S., Inc.,
858 F.2d 712 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Mega Constr. Co. v. United States,
29 Fed. Cl. 396 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Mingus Constructors v. United States,
812 F.2d 1387 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . 11

Monitor Plastics Co., ASBCA No. 14447,
72-2 BCA ¶ 9626 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Morrison-Knudsen Co., ASBCA No. 32476,
90-3 BCA ¶ 23,208 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Norwood Mfg., Inc. v. United States,
21 Cl. Ct. 300 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Olin Jones Sand Co.,
225 Ct. Cl. 741 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Orbas & Associates v. United States,
34 Fed. Cl. 681 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

PCL Constr. Servs. v. United States,
47 Fed. Cl. 745 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Reliance Insurance Co. v. United States,
931 F.2d 863 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Rhen v. United States,
17 Cl. Ct. 140 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Santa Fe Engineers Inc. v. United States,
818 F.2d 856 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Seal-Flex, Inc. v. Athletic Track and Court Const.,
98 F.3d 1318 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

SMS Data Products Group, Inc. v. United States,
19 Cl. Ct. 612 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Spirit Leveling Contractors v. United States,
19 Cl. Ct. 84 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Stuyvesant Dredging Co. v. United States,
834 F.2d 1576 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . 22

Torncello v. United States,
681 F.2d 756 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

United States v. King,
395 U.S. 1 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15

United States v. Mitchell,
445 U.S. 535 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v. Sherwood,
312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Spearin,
248 U.S. 132 (1918) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 22

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Western Empire Constructors, Inc. v. United States,
20 Cl. Ct. 668 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

W.M. Schlosser Co., Inc. v. United States,
705 F.2d 1336 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

William Green Constr. Co. v. United States,
477 F.2d 930 (Ct. Cl. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## STATUTES AND REGULATIONS

41 U.S.C. § 601 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

48 C.F.R. § 49.109-7(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

48 C.F.R. § 49.109-7(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

48 C.F.R. § 49.201(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

48 C.F.R. § 203(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

48 C.F.R. § 49.207 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 21

48 C.F.R. § 52.209-4716 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

48 U.S.C. § 52.245-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 26, 28

48 C.F.R. §52.245-2(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15, 16

48 U.S.C. § 52-249-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

48 C.F.R. § 52-249-2(f)(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## COURT RULES

Rule of Court of Federal Claims 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Rule of Court of Federal Claims 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **SYSTEMS DEVELOPMENT CORP.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 06-232C** |
| | ) | **(Judge Baskir)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S MOTION TO DISMISS, OR**
**ALTERNATIVELY, FOR SUMMARY JUDGMENT**

Pursuant to Rules 12(b)(1), and 56 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court grant summary judgment in favor of defendant and deny plaintiff's claim for damages. There are no genuine issues of material fact and defendant is entitled to judgment as a matter of law. In support of our motion, we rely upon plaintiff's amended complaint, the following brief, the consolidated statement of uncontroverted facts, and the appendix supporting the consolidated statement of uncontroverted facts.

## STATEMENT OF THE ISSUES

1. Whether this Court lacks jurisdiction to entertain the claims contained in plaintiff's amended complaint contending that the Government breached its duties to the plaintiff by purportedly providing defective

specifications, acting in bad faith, breaching the covenant of fair dealing and cooperation, and failing to disclose superior knowledge to the plaintiff because plaintiff never submitted a claim or requested a final contracting officer's decision with respect to its theories of entitlement.

2. Whether plaintiff is precluded by contract provision 48 C.F.R. § 52.245-2(h), from pursuing any of its breach of contract claims against the Government that are based on purported flaws of Government furnished property.

3. Whether plaintiff is precluded by contract provision 48 C.F.R. § 52.249-2, from pursuing any of its breach of contract claims against the Government where the contract provides the termination for convenience costs as the sole remedy.

4. If this Court determines that it possesses jurisdiction to entertain plaintiff’s claims, whether the United States can be required to pay plaintiff any additional damages where it has already paid all audited and supported amounts to plaintiff.

## STATEMENT OF THE CASE

I. Nature Of The Case

This action concerns a fixed-price supply contract between plaintiff Systems Development Corporation ("SDC") and the United States Army Aviation and Missile Command ("AMCOM"). Under the terms of the contract, SDC was to supply 2 first articles and 22 production quantity printed circuit boards for the Hawk missile system in the first year of the contract, with the possibility of supplying 24 additional circuit boards in each of four option years. The total contract price, including all option years was $430,000.

SDC never produced any circuit boards to the Government, and the contract was ultimately terminated for the Government's convenience on February 17, 2004. SDC made an offer to settle the termination for convenience on April 23, 2004, for a total of $789,058. SDC 88-108. SDC and AMCOM engaged in negotiations to settle the termination but did not come to an agreement. During the negotiations, SDC submitted several written offers to settle the termination, but at no time did it submit a certified claim to the Termination Contracting Officer ("TCO") nor request a final decision on any of its claims. SDC did receive a total payment of $403,563 as the Government's resolution of the termination for

convenience. SDC then filed this complaint raising new theories of recovery and claiming additional damages of $2,166,316.

II. Statement Of Facts

The facts pertinent to this motion are not in dispute. Systems Development Corporation ("SDC") was awarded contract number DAAH01-00-C-0077 on May 9, 2000. ("contract").[1] The contract was a firm-fixed price contract by the U.S. Army Aviation and Missile Command ("AMCOM") to supply circuit card assemblies (P/N 13235072, NSN 5998-01-319-4313) to be used in the Hawk missile system. The contract required SDC to supply 24 circuit card assemblies, consisting of two first articles and 22 each production quality. The contract provided for the base year and four outyear option periods. Delivery was originally established as August 8, 2000 for the first articles, contract line item number ("CLIN") 0001AA, and February 1, and 2, 2001 for the production quantity, CLIN 0001AD. The total contract price was $430,000. CSUF ¶ 1

SDC represented that it was a qualified Section 8(a) contractor, and the contract was awarded to it as a direct award after consultation between SDC and the AMCOM small business office. CSUF ¶ 2.

---

[1]SDC was also awarded contracts DAAH01-00-P-0741 and DAAH01-01-D-0013. These contracts are not at issue in this litigation.

The contract incorporated a Technical Data Package ("TDP") listing all of the parts needed for the circuit cards. CSUF ¶ 4. The TDP stated that the Government would furnish stable base drawings, and programmable data in electronic form ("PROM data") to the contractor upon request. Id.

FAR section 52.245-2 "Government Property," was incorporated into the contract at clause I-72. Paragraph (h) provided, in part, that "The right to an equitable adjustment shall be the contractor's exclusive remedy. The Government shall not be liable to suit for breach of contract for - - (1) Any delay in delivery of Government-furnished property; (2) Delivery of Government-furnished property in a condition not suitable for its intended use. CSUF ¶ 5

FAR section 52-249-2 "Termination for Convenience" was incorporated into the contract at clause I-43. Id. Paragraph (g) provided that the Contracting Officer could award specified costs to the contractor to settle the termination for convenience. Id.

SDC subcontracted with Teledyne Brown Engineering ("TBE") on July 11, 2000 for TBE to purchase all the materials needed to fabricate, assemble and deliver 129 Hawk Circuit cards. The total amount of this purchase order was $403,297.58. CSUF ¶ 11.

SDC never delivered any circuit card assemblies to AMCOM, at any time. CSUF ¶ 12.

The contract was terminated for the convenience of the Government on February 17, 2004. CSUF ¶ 12. SDC made an offer to settle the termination for convenience on April 23, 2004, for a total of $789,058. This offer included $397,771.58 as SDC's costs of settling with the subconractor, TBE. CSUF ¶¶ 15, 16.

Additionally, SDC sought $63,830 in profits, $297,500 in general and administrative expenses, $19,301 in labor costs for its procurement personnel, and $14,315 for the cost of negotiating the settlement. CSUF ¶ 17.

SDC's settlement offer was audited by the Defense Contract Management Agency ("DCMA") on July 15, 2004. CSUF ¶ 17 The DCMA auditor concluded that SDC's proposal claimed unsupported general and administrative expenses (G&A). The auditor also concluded that SDC was in a loss position with respect to the contract. CSUF ¶¶ 18-19.

On March 25, 2005, following several months of negotiations between SDC and the Termination Contracting Officer ("TCO"), the TCO issued his final decision rejecting SDC's settlement offer, and concluding that SDC was entitled to $403,563. The TCO determined that SDC has

provided supporting documentation for its subcontractor costs, but not for the other expenses. The TCO calculated SDC's settlement costs of $55,338, based on the $391,913 allowed as subcontractor costs. CSUF ¶¶ 27, 29. The TCO denied all other amounts claimed by SDC because SDC had not provided documentary support for them. ¶¶ 28-31. The TCO also concluded that SDC was in a loss position with respect to the contract, and therefore adjusted SDC's claimed amount of profit. CSUF ¶ 32.

The TCO concluded that SDC should be paid a total of $403,463. CSUF ¶ 33.

SDC then filed this complaint, alleging four counts of breach of contract, and claiming damages in excess of $2 million dollars.

Specifically, SDC alleged that AMCOM failed to provide it with specifications free of defects, and that the Government had breached the covenant of fair dealing and cooperation by refusing to compensate SDC for delay purportedly caused by the Government. SDC further contended that the Government acted in bad faith by failing to correct purportedly obvious defects in the TDP, specifically by failing to provide sufficient mylar drawings. SDC also contended that the Government breached its duty to cooperate with the plaintiff by failing to disclose superior knowledge to

SDC. Finally, SDC contended that it was entitled to an additional $19,316 in termination settlement costs.

Excepting the proposed claim for settlement costs, SDC never submitted a written claim to any contracting officer concerning the allegations contained in its amended complaint.

**SUMMARY OF ARGUMENT**

SDC cannot recover upon a breach of contract claim because it has failed to establish the jurisdiction of this Court concerning claims which have not been submitted to the contracting officer.

Even if the breach of contract claims were not precluded by the terms of the contract, they would have to be dismissed because SDC never presented them in a claim to the contracting officer, and never received a final contracting officer's decision as required by the Contract Disputes Act ("CDA"). 41 U.S.C. § 601 et seq. Because SDC has not properly complied with the requirements of the CDA, this Court lacks jurisdiction to entertain SDC's breach of contract claims, and they must be dismissed.

To the extent that SDC has a remedy in this Court, it is limited by the terms of the contract to redressing matters relating to the termination settlement. The Government property clause incorporated into SDC's contract precludes it from bringing a breach of contract action. Therefore,

to the extent the amended complaint alleges breach of contract and seeks contract damages, it must be dismissed. Specifically, SDC contends that AMCOM breached duties implied in the contract by issuing purportedly defective specifications and a purportedly defective Technical Data Package ("TDP") , acting in "bad faith," and failing to disclose "superior knowledge." All of these claims must be dismissed.

Additionally, SDC received everything to which it was entitled when it was paid $403,563 to settle the termination of its contract for convenience, a fixed price supply contract with a total value of $430,000. SDC has identified no basis on which it is entitled to any further recovery.

Finally, based on SDC's expert's report on damages, it appears that SDC claims damages for lost business opportunities and other consequential damages, which are unavailable as a matter of law. The Government is entitled to judgment as a matter of law on all claims raised by SDC.

## ARGUMENT

### I. SDC's Breach of Contract Claims Must Be Dismissed Based On Principles of Sovereign Immunity

Like its predecessor, the United States Court of Claims, the United States Court of Federal Claims is a court of limited jurisdiction. Dyna-lectron Corp. v. United States, 4 Cl. Ct. 424, 428, aff'd, 758 F.2d 665 (Fed.

Cir. 1984)(Table). Absent congressional consent to entertain a claim against the United States, this Court lacks authority to grant relief. United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941).

A waiver of sovereign immunity, and thus consent to be sued, must be expressed unequivocally and cannot be implied. Library of Congress v. Shaw, 478 U.S. 310 (1986); United States v. King, 395 U.S. 1, 4 (1969). Any grant of jurisdiction to this Court must be construed strictly, and all conditions placed upon such a grant must be satisfied before the Court may accept jurisdiction. United States v. Mitchell, 445 U.S. 535, 538 (1980); Cosmic Construction Co. v. United States, 697 F.2d 1389, 1390 (Fed. Cir. 1982). As the United States Court of Appeals for the Federal Circuit has stated, "[i]n construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented by Congress." Fidelity Construction Co. v. United States, 700 F.2d 1379, 1387 (Fed. Cir.), cert. denied, 464 U.S. 826 (1983).

A. SDC May Not Raise Claims In This Court That Were Not Presented To the Termination Contracting Officer

SDC's breach of contract claims must be dismissed because they were not presented in a certified claim to the Termination Contracting Officer.

1. SDC Must Comply With The CDA

To assert a proper CDA claim, the contractor must submit to the contracting officer a clear and unequivocal written demand that gives the contracting officer adequate notice of the basis and amount of the claim. Mingus Constructors v. United States, 812 F.2d 1387, 1395 (Fed. Cir. 1987); Contract Cleaning Maintenance, Inc. v. United States, 811 F.2d 586, 592-93 (Fed. Cir. 1987). Moreover, the request must make clear that it seeks a decision from the contracting officer, as distinguished from a response to a proposal, which merely is an invitation to negotiate. James M. Ellett Construction Co. v. United States, 93 F.3d at 1543; Mingus Constructors v. United States, 812 F.2d at 1395; Hoffman Construction Co. v. United States, 7 Cl. Ct. 518, 525 (1985).

The CDA requirement that a contractor give the contracting officer "adequate notice of the basis and amount of the claim" forbids a contractor from asserting one theory of recovery to the contracting officer and another to this Court. Rather, the contractor must assert its theory of recovery to

the contracting officer or else forego the right to assert that theory in this Court. In City of Tacoma, Dept of Public Utilities v. United States, 31 F.3d 1130 (Fed. Cir. 1994), the court of appeals considered and rejected a contractor's attempt to inject claims not set forth in its CDA claim. 31 F.3d at 1134-35; accord Reliance Insurance Co. v. United States, 931 F.2d at 866 (Claims Court did not have jurisdiction to entertain breach of contract claim when plaintiff submitted to the contracting officer only a request for equitable adjustment related to an alleged change to the contract); Santa Fe Engineers Inc. v. United States, 818 F.2d 856, 858-60 (Fed. Cir. 1987) (plaintiff may not bring total cost claim in Court where plaintiff submitted only claim for change orders to contracting officer); Orbas & Associates v. United States, 34 Fed. Cl. at 70-71 (plaintiff may not assert one contract interpretation to contracting officer and another to Court); SMS Data Products Group, Inc. v. United States, 19 Cl. Ct. at 616 (plaintiff may not sue for lost profits where only compensatory damages claim submitted to contracting officer); Spirit Leveling Contractors v. United States, 19 Cl. Ct. at 89-92 (rejecting differing site conditions claim for lack of jurisdiction because contractor had not alleged differing site conditions before contracting officer).

In its November 12, 2004, settlement letter to the contracting officer, SDC contended that the purported flaws in the specifications and TDP had not been corrected by the Government, and that SDC was entitled to an equitable adjustment on that basis. CSUF ¶¶ 24-25. SDC asserted a settlement claim in the amount of $617,641. CSUF ¶ 24.

Here, by contrast, SDC raises four separate counts of breach of contract, defective specifications, bad faith, breach of the covenant of fair dealing and cooperation, bad faith, and superior knowledge that it intentionally withheld from SDC. Additionally, SDC now claims over $2 million dollars in breach of contract damages, as opposed to the equitable adjustment it sought in the settlement offers.[2] None of SDC's breach claims was presented to, nor evaluated by, the TCO. Nothing in the settlement offers submitted by SDC alerted the TCO to the breach of contract claims that SDC now attempts to pursue in this Court. None of the claims raised in SDC's complaint are contained in the settlement offers submitted to the contracting officer. SDC 249-259. In addition, Count V

[2]Additionally, the evidence offered by SDC to support its claims for damages, purports to establish over $7 million dollars in lost profits, loss of company, increases in General and Administrative costs, lease payments to TBE, and unspecified employment costs and litigation expenses. None of these theories, nor this evidence, was presented to the contracting officer. CSUF ¶¶ 40, 41.

depends upon additional allegations that were not brought to the contracting officer's attention in the November 12, 2004 letter.

SDC never submitted a claim pursuant to the CDA concerning any of the claims raised in its complaint. Therefore, SDC has not met the jurisdictional prerequisites of this Court and the Court lacks subject matter jurisdiction to entertain its complaint. Accordingly, the complaint should be dismissed.

B. SDC Cannot Bring An Action For Breach Of Contract Because Of Allegedly Defective Government Provided Property

It is clear that the Government has not consented to be sued for breach of contract on the undisputed facts before the Court. SDC's contract contained Clause I-72, incorporating 48 C.F.R. § 52-245-2, "Government Property." CSUF ¶ 4. Sub-Paragraph (h) of that provision states, in pertinent part:

> The right to an equitable adjustment shall be the Contractor's exclusive remedy. The Government Shall not be liable to suit for breach of contract for –
> (1) any delay in delivery of Government-furnished property;
> (2) Delivery of Government-furnished property in a condition not suitable for its intended use; . . .

Id.

Here, SDC's amended complaint contains four counts of breach of contract on which SDC seeks relief.[3] In Count 1, SDC alleges that the Government provided it with defective specifications, in Count 2, SDC alleges that the Government breached the covenant of fair dealing and cooperation. In Count III, SDC claims that the Government breached the contract by acting in bad faith. In Count V, SDC claims that the Government breached the contract by failing to disclose superior knowledge to SDC.

Each of these claims purports to be based on the purported failure of the Government to timely furnish SDC with property listed on the TDP, specifically, usable stable base drawings, and programmable data in digital format. Amended Complaint ¶ 4. Even if SDC's claims were true, however, its breach of contract claims must be dismissed because SDC has no right to bring them under the terms of the contract. Clause I-72 of the contract makes clear that the Government has not waived its sovereign immunity to consent to be sued for breach of contract in this situation. 48 C.F.R. § 52-245-2 (h).

[3]Count IV claims that the Government failed to pay appropriate termination for convenience costs.

The provisions of the CDA constitute a limited waiver of sovereign immunity, and, as such, "the limitations and conditions under which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." Id.; King, 395 U.S. at 3-5; Brookfield Construction Co., Inc. v. United States, 228 Ct. Cl. 551, 560, 661 F.2d 159, 165 (1981). Here, the Government has clearly limited the manner and the grounds on which it can be sued. Moreover, by executing the contract, SDC accepted those terms. SDC's claims for breach of contract must, therefore, be dismissed because this Court lacks jurisdiction to entertain them. W.M. Schlosser Co., Inc. v. United States, 705 F.2d 1336, 1338-39 (Fed. Cir. 1983).

Additionally, the contract incorporated 48 C.F.R. § 52-249-2 "Termination for Convenience," and this provides another basis for dismissing SDC's claims. A contractor may not assert a claim for breach of contract damages where the contract already provides a remedy. Info. Sys. & Networks Corp., ASBCA No. 42659, 00-1 BCA ¶ 30,995 (claim for breach damages barred by convenience termination clause). Here, 48 C.F.R. § 52-249-2 clearly provides that the contractor may negotiate a settlement for its costs after the contract has been terminated for convenience, or, if no settlement can be reached, the termination

contracting officer may make a determination based on specified standards and criteria. 48 C.F.R. § 52-249-2 (f), (g). Moreover, as we establish in Section III of our brief, the termination contracting officer made the determination contemplated in the regulation, and SDC has recovered all amounts properly determined to be owed to it.

In its complaint, SDC has sued the Government for millions of dollars alleging four different theories of breach of contract, all based on SDC's claims that the Government failed to provide it with stable base drawings, and programmable date in electronic format. Under the terms of the contract, however, even if SDC's allegations regarding the sufficiency of the property provided to it under the TDP could be correct, its remedy for such circumstances is limited to a claim for an equitable adjustment, not the kind of punitive damages SDC seeks for its claims of breach of contract.

II. Standard Of Review For Summary Judgment

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party bears the initial burden of establishing the absence of any disputes of material fact. Seal-Flex, Inc. v. Athletic Track

and Court Const., 98 F.3d 1318, 1321 (Fed. Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When the movant has met its initial burden, the non-movant must respond with sufficient evidence to show that there is a material factual dispute and that, on the non-movant's evidence, the movant is not entitled to judgment as a matter of law." Id. Alternatively, if the moving party can show that there is an absence of evidence to support the non-moving party's case, then the burden shifts to the non-moving party to proffer such evidence. Celotex, 477 U.S. at 325. The Supreme Court has emphasized that the "[s]ummary judgment procedure is not properly regarded as a disfavored procedural shortcut but, rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action. . . .'" Celotex, 477 U.S. at 327 (citations omitted). The Government's motion for summary judgment should be granted and plaintiff's claim dismissed.

## III. SDC Has Been Paid All Termination For Convenience Costs To Which It Is Entitled

As an initial matter, we note that the contract here incorporated the termination for convenience provision set out at 48 C.F.R. § 52-249-2, and that this established SDC's sole remedy against the Government when the contract was terminated for convenience. Info. Sys., 00-1 BCA ¶ 30,995.

The amounts recoverable by a contractor when a contract is terminated for the convenience of the Government are governed by Subpart 49.2 of the Federal Acquisition Regulation ("FAR"). Specifically, in a termination for convenience situation, a contractor is entitled to be fairly compensated for completed work, and for preparations that the contractor made for completing the work that was terminated. FAR § 49.201(a). While settlement by agreement is preferred under the FAR provisions, in cases such as this where the parties cannot reach an agreement, the TCO is authorized to issue a settlement by determination. FAR § 49.109-7(a). The contractor has the burden of establishing, by proof satisfactory to the TCO, the amount proposed by the contractor. FAR § 49.109(c).

The contract at issue here was a fixed-price supply contract with a total contract price of $430,000. CSUF ¶ 1. SDC offered to settle the termination of this contract for $759,058. CSUF ¶ 13.

In his final decision on SDC's termination for convenience settlement offer, the TCO determined that SDC was entitled to a total of $403,563.00. CSUF ¶ 23. The net payment resulting from this decision was $366,295.00, because SDC had already received a partial payment of $37,268.00. Id.

The TCO provided explanation and authority for each of the cost elements that SDC claimed in its settlement offer. The TCO allowed SDC to recover its costs to its subcontractor, TBE, because SDC provided adequate documentary support for those costs in his final decision. CSUF ¶ 26. The TCO rejected all other cost elements claimed by SDC because SDC failed to provide adequate documentary support. Id. Specifically, the TCO denied the labor costs that SDC claimed because SDC had provided no time cards or other payroll or timekeeping records to support the hours and wages claimed. CSUF ¶ 27.

SDC was not entitled to claim profit on this termination because the contract was in a loss position at the time of termination. FAR § 49-203(b). CSUF ¶ 12. Therefore, the TCO adjusted the settlement amount to be paid to SDC as required by the applicable provision of the FAR. Section 49-203(b) provides that for a settlement such as this on an inventory basis, SDC's allowable recovery must be adjusted by a ratio of the total contract ($430,000) price to the total cost incurred before termination ($447,608) plus the estimated cost to complete the entire contract. ($29,304) Id.; CSUF ¶ 29. On this basis, the TCO determined that the amount that SDC was entitled to recover in the termination for convenience was $403,563. CSUF ¶ 30.

The net payment resulting from this decision was $366,295, because SDC had already received a partial payment of $37,268. CSUF ¶ 31. Payment of the TCO's final settlement amount was rendered to SDC on April 1, 2005. CSUF ¶ 32. SDC has, therefore, been fully compensated for any compensable loss by the termination for convenience payment that it received.

SDC bore the burden of establishing, "by proof satisfactory to the TCO" the amount proposed for settlement. 48 C.F.R. § 49.109-7(c) In the estimation of the TCO, SDC failed to carry that burden. Moreover, SDC is not entitled to recover more than the total contract price for this contract. Thus, the TCO correctly declined to accept SDC's settlement offer which exceeded the contract price by 83 percent. 48 C.F.R. § 49.207.

In response, SDC does not challenge the TCO's conclusion that it failed to support its claimed labor and G&A costs with contemporaneous documents, nor that the TCO imposed an unreasonable burden of proof on it. SDC does not challenge that it was in a loss position with respect to the contract, nor does it allege that the TCO's adjustment of its profit calculation was incorrect or improper. In short, SDC does not appeal the substance or propriety of the TCO's final decision here. Instead, SDC raises an entirely new crop of claims alleging that it is entitled to, not the

balance of its settlement offer, but rather millions of dollars in breach of contract damages. Accordingly, any claim by SDC for termination for convenience costs must be dismissed.

## IV. SDC Cannot Recover For Purportedly Defective Performance Specifications

### If The Claim Is Not Is Not Dismissed, The Government Is Entitled To Judgment In Its Favor Because It Is Undisputed That This Contract Involved Only Performance Specifications, For Which No Warranty Is Implied

There are four types of specifications – design specifications, performance specifications, purchase descriptions, and composite specifications. Aleutian Constr. v. United States, 24 Cl. Ct. 372 (1991); Monitor Plastics Co., ASBCA No. 14447, 72-2 BCA ¶ 9626.

The scope of government liability depends on the specification type. Lopez v. A.C. & S., Inc., 858 F.2d 712 (Fed. Cir. 1988); Morrison-Knudsen Co., ASBCA No. 32476, 90-3 BCA ¶ 23,208. The oft-cited "Spearin" doctrine rests, in part, upon a differentiation between "design" and "performance" specifications which identifies contracts for which a warranty of specifications does and does not apply. Hercules, Inc. v. United States, 516 U.S. 417 (1996); United States v. Spearin, 248 U.S. 132 (1918). Only a design specification produces the implied warranty. See, e.g. Stuyvesant Dredging Co. v. United States, 834 F.2d 1576, 1582 (Fed. Cir.

1987) ("Design specifications explicitly state how the contract is to be performed and permit no deviations. Performance specifications, on the other hand, specify the results obtained, and leave it to the contractor to determine how to achieve those results.").

In other words, the Government is only liable "for defective specifications when it mandates adherence to specific means and methods of construction and does not allow the contractor to use its discretion in choosing procedures to accomplish the work." Daewoo Eng'g & Constr. Co. v. United States, 73 Fed. Cl.547 (2006). "The amount of discretion provided in a contract to choose means and methods determines whether a particular specification is for design or performance." Id. at *19 (citing Blake Constr. Co. v. United States, 987 F.2d 743, 745 (Fed. Cir. 1993)). The "Government can provide some details and directions concerning performance of work without its necessarily being deemed a design specification." Id. (citing PCL Constr. Servs., Inc. v. United States, 47 Fed. Cl. 745, 796 (2000)).

Here, it is undisputed that SDC's contract contained only performance specifications. The contract incorporates the standard specification provided at 48 C.F.R. § 52.209-4716 governing "Electronic Fabrication: Requirements for Soldered Electrical and Electronic

Assemblies. That specification was incorporated into the contract in Section C of the contract, and does not dictate the means or design by which SDC was to supply the circuit boards. It sets out only the generally applicable Government standard to be achieved for any soldered electronic parts. SDC 17. Therefore, there are no design specifications at issue in this case, and therefore no Government warranty of them. SDC's claim for defective specifications fails as a matter of law, the Court should enter judgment in favor of the Government on Count I of the amended complaint.

## V. SDC's Claim For Breach Of The Covenant Of Fair Dealing And Cooperation Must Fail Because It Is Premised On The Claim For Defective Specifications

### A. SDC's Claim For Breach of Covenant of Fair Dealing and Cooperation Must Be Dismissed

The Court should enter judgment in the Government's favor upon Count II of the amended complaint because the Government has not breached any duty to SDC. SDC claims that the Government breached the "covenant of fair dealing and cooperation" because the Government provided SDC with "defective specifications" which required "SDC's executives" to perform additional work. Amended Complaint 8 ¶ 29.

We note that this claim is derivative of the claim in Count I of the amended complaint and thus, is a breach of contract claim based on government furnished property that was either delayed or not usable for its

intended purpose. As such, it is precluded by the Government Property clause of the contract which specifically states that the Government is not subject to suits for breach of contract based on late or unusable Government furnished property. As we explain above, the Government has not waived sovereign immunity to be sued for breach of contract in these circumstances and Count II should be dismissed.

B. If The Claim Is Not Dismissed, The Government Is Entitled To Judgment In Its Favor As A Matter Of Law

As demonstrated in the prior section, the performance specifications involved in this contract do not give rise to a government warranty, and cannot serve as the basis for an award of damages based on defective specifications. Put another way, performance specifications cannot be found to be "defective" as SDC uses the term, i.e., resulting in liability for damages on the part of the Government.

In Count II of the amended complaint, SDC states that it was the "defective specifications" provided by the Government that caused three years of delay, which, in turn, caused SDC executives to expend additional time, and resulted in the additional labor costs asserted by SDC. Because this claim depends on a finding that there were "defective specifications," it must fail for the reasons stated in Section IV of our brief. The Court should

enter judgment in favor of the Government on Count II of the Amended Complaint.

## VI. The Government Is Entitled To Judgment As A Matter Of Law Upon Each of SDC's Contract Allegations

In counts III and V of the amended complaint, SDC alleges that the Government acted in bad faith and failed to disclose superior knowledge.

As an initial matter, we note that, again, each of these are breach of contract claims, based on the delivery of government furnished property that was purportedly not usable for its intended purpose. This is precisely the type of action precluded by the government property clause of the contract, and the Court should dismiss SDC's bad faith claim. 48 U.S.C. § 52.245-2.

### A. SDC Cannot Show That the Government Acted In Bad Faith

Government officials are presumed to act in good faith. See Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239 (Fed. Cir. 2002). A plaintiff must demonstrate clear and convincing evidence of bad faith to overcome that presumption. See id. That standard is intended to be nearly as high a burden as the long-held prior standard of "well-nigh irrefragable" proof. Id. SDC is required to show "evidence of specific intent to injure the plaintiff." Norwood Mfg., Inc. v. United States, 21 Cl. Ct. 300, 309 (1990) quoting Kalvar Corp. v. United States, 543 F.2d 1298, 1302

(1976), and Torncello v. United States, 681 F.2d 756, 770 (1982). Indeed, in Kalvar, this Court's predecessor held that establishing bad faith required a showing "tantamount to a showing of malice or conspiracy." Kalvar, 453 F3d at 1302. SDC's claims of bad faith cannot meet that standard.

SDC has no evidence whatsoever that anyone at AMCOM held malice toward SDC, nor that there was a conspiracy to injure SDC in providing the mylar drawings. John Farris, an engineer at AMCOM, explained that his office performs

> an engineering producibility review. Then it goes to quality assurance and they do a quality review. Then it goes to our drawing repository, and they develop – now they do a CD. I think back then they were doing hard copy drawings. All that's done in preparation of a solicitation going out on the street. And through that review we determine whether or not a spares part can be competed or not. And during that review, if we find that it can't be competed for any reason, there's something missing, then we go to the project office that has the authority over that part, that weapons system, and then it is their responsibility to tell us to restrict that item to whomever source that's been approved. In the case of Hawk, it's usually Raytheon. And that's how the process works.

Deposition of John Farris, 33:21-34:22

Here, SDC has no evidence that this process was not followed, or that anyone involved in this process had specific intent to injure or harm SDC. The claim for bad faith, therefore, fails as a matter of law, and the

Court should enter judgment in favor of the Government upon Count III of the Complaint.

B. The Government Did Not Fail To Disclose Superior Knowledge To SDC

In order to establish that the Government breached its duty to disclose information to it, SDC must demonstrate that (1) the information was not reasonably available to it prior to bidding upon the contract, Western Empire Constructors, Inc. v. United States, 20 Cl. Ct. 668, 673-74 (1990); (2) the company undertook to perform its contractual obligations without vital knowledge of a fact that affects performance costs or direction, (3) the Government was aware that SDC had no reason to obtain such information, (4) any contract specification supplied misled the contractor, or did not put it upon notice to inquire, and (5) the Government failed to provide the relevant information. GAF Corp. v. United States, 932 F.2d 947, 949 (Fed. Cir.), cert. denied, 502 U.S. 1971 (1991).

Here, the Government had no superior knowledge. SDC alleges that the Government knew that the circuit cards could only be supplied by Raytheon, and failed to tell SDC that when it awarded the contract. As demonstrated below, the undisputed facts establish that Raytheon was not the only entity that could supply the cards. SDC's argument therefore must fail.

1. The Circuit Cards Could Not Be Procured Only From Raytheon

SDC's complaint contains several mischaracterizations of the facts that are contradicted by undisputed evidence.

*a. The Government did not disclose that electronic PROM data necessary for contract performance was not available.*

Amended Complaint 11 ¶ 47.

At the time this contract was awarded, it was not known to the Government that there would be difficulty obtaining the electronic PROM data from Raytheon. Therefore, the Government cannot be faulted for not disclosing it to SDC. Jerry Tignor testified at his deposition that the Government had paid Raytheon for Level III documentation for this technology which means that Raytheon will provide everything necessary to allow for public competition. Deposition of Jerry Tignor 22:1-6, 35:20-36:11. The Government, therefore, had every reason to expect the PROM data to be provided from Raytheon without difficulty, so it had no reason either to disclose the "unavailability" of the data to SDC, nor to disclose that only Raytheon could produce the part.

*b. MIL-S-13949 was cancelled and "could not be replaced."*
Amended complaint 10 ¶ 40-41.

As explained by John Farris, this specification was the only cancelled one relevant to this contract. CSUF ¶ 47

Moreover, AMCOM executed a waiver of the cancellation to allow SDC to use it despite it being cancelled. As Mr. Ferris testified:

> Q. What I'm concerned with is the language that says 'Cancelled MIL-SPECS that cannot be replaced.'
> A. That's true. That's why we allowed [SDC] to use the cancelled spec on this form.
> Q. I see. Okay.
> A. So this overrode that problem.

CSUF ¶ 47

*c. One of the AMCOM engineers held the opinion that the Government procure the parts from Raytheon, rather than SDC.*[4]

Amended comxplaint 10-11 ¶ 42-43.

The opinion of Larry Nicholls, an AMCOM, engineer does not constitute "vital knowledge" of a fact that could affect SDC's performance costs or direction" within the meaning of the "superior knowledge doctrine." See GAF Corp. 932 F.2d 947, 949 Rather, it is merely evidence that the AMCOM engineers were performing their obligations in attempting to pass along technical opinions and recommendations they believed useful. In this case, Don Mikell, another AMCOM engineer, testified at his deposition that he had did not make procurement decisions and in fact had no

[4] This statement refers to a document apparently written by Larry Nichols, and therefore constitutes inadmissible hearsay. FRE 801. Deposition of Don Mikell 8:14-21.

knowledge of what the procurement people did. Deposition of Don Mikell 13:15-19.

The allegations in Count V of the complaint are, therefore, without merit, and the Court should enter judgment in favor of the Government.

C. SDC Is Not Entitled To Recover The Settlement Expenses Alleged In Count IV

In Count IV of the amended complaint, SDC claims $19,316 in "settlement expenses." Amended complaint 10 ¶ 37. In its offer to settle the termination for convenience, SDC included a claim for $14,316. The TCO determined that SDC was claiming expenses for hours of labor required to settle the termination. The TCO denied these claimed expenses because they constituted direct expenses for employees whose full salaries remained charged to the overall G&A expense pool. CSUF ¶ 30. The TCO denied these cost to avoid double payment. SDC is not entitled to recover costs already included in its rate for overhead and G&A expenses. Bermite Div. of Tasker Indus., ASBCA 18280, 77-1 BCA 12349, aff'd on motion for reconsid., 77-2 BCA. The Court should enter judgment for the Government on Count IV of the complaint.

V. SDC Is Not Entitled To Recover Damages For Lost Business Opportunities

Mr. Agresto, SDC's proffered expert on damages, states that SDC's damages are based on lost profits, loss in company value, and other costs

such as G&A cost increases resulting from loss of business, actual lease payments to Teledyne Brown for unused facility space, and unspecified employment costs and associated litigation expenses resulting from layoffs. CSUF ¶ 42.

SDC is not entitled to recover any damages for any lost business opportunities, or other consequential damages resulting from lost business opportunities, such as increased G&A costs, and loss in company value. This Court has clearly and consistently held that a contractor may not recover damages which "involve plaintiff's ability to obtain other work." Olin Jones Sand Co., 225 Ct. Cl. 741, 743 (1980). In Olin Jones, the plaintiff attempted to recover damages based upon its representation that the Government had impaired its ability to obtain other work that required the company to issue a bond. Id., at 742. The Court explicitly held that the plaintiff could not recover damages that allegedly resulted when,

> because of defendant's [the Government's] actions, the bonding company or others refused to issue bonds on behalf of plaintiff on other contracts or work, thus crippling the contractor's ability to obtain new contracts or ne work. Even if proven, these damages would be too remote and speculative to be recoverable.

Id., at 744.

Similarly, this Court held in William Green Constr. Co. v. United States, 477 F.2d 930 (Ct. Cl. 1973), that "there would be no recovery for

general loss of business, the claimed loss of the entire [company's] net worth, and losses and the non-federal [contracts] – such damages are all deemed too remote and consequential." This theme was repeated in Rhen v. United States, 17 Cl. Ct. 140, 143-44 (1989), when the Court dealt with a claim from a contractor who had been terminated for default, and alleged that its lack of ability to obtain future bonding resulted in it not being able to obtain other profitable contracts, and that the Government should be ordered to compensate it for its lost business opportunities. The Court rejected this claim outright, concluding that the claim was for "general loss of business as a result of the default termination." Id. Here, SDC does not provide any basis for evaluating its claims for damages except the wildly speculative report from its expert, so it is impossible to ascertain the factual basis for the damages, other than the vague assertion that SDC was damaged by the "improper actions of Army representatives." CSUF ¶ 41. At his deposition, Mr. Agresto testified that he had basically no idea what the particular actions of the Government were, that he just assumed that the contract had been breached, and that this must have affected SDC's ability to obtain other work, thereby causing a loss of company value and an increase in G&A costs because of the reduced amount of business. CSUF ¶¶ 42-43.

This is, in substance, the identical claim to that has been universally rejected in this Court as too remote, consequential and speculative, and thus, even assuming for purposes of this motion that SDC's business value has been negatively affected, SDC's claim is one upon which recovery is unavailable as a matter of law. Mega Constr. Co. v. United States, 29 Fed. Cl. 396, 473-474 (1993); Gates v. United States, 33 Fed. Cl. 9, 12 (1995)( claims for lost business opportunities were not within the Court's jurisdiction).

## CONCLUSION

For these reasons, defendant respectfully requests that the Court grant summary judgment in favor of defendant and dismiss plaintiff's complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

OF COUNSEL:

STEPHEN F. PEREIRA
Defense Contract
Management Agency

/s/ Joan M. Stentiford
JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street
Washington, D.C. 20530
Tele: (202) 616-0341
Fax: (202) 514-8624

July 23, 2007

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 23rd day of July, 2007, the foregoing "DEFENDANT'S MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Joan M. Stentiford
JOAN M. STENTIFORD