# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SYSTEMS DEVELOPMENT CORP. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 06-232C |
| v. | ) | (Judge Baskir) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director
JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 616-0341

Attorneys for Defendant

OF COUNSEL:

STEPHEN F. PEREIRA
Defense Contracting
Management Agency

Dated: October 22, 2007

## TABLE OF CONTENTS

I. This Court Lacks Jurisdiction To Consider SDC's Claims For Breach Of Contract Because The Claims Were Never Presented In A Certified Claim To A Contracting Officer . . . . . . . . . 3

II. The Termination For Convenience Clause Provides SDC's Only Remedy Under The Contract . . . . . . . . . . . . . . . . . . . . . . . . . 6

III. The Government Did Not Provide SDC With Defective Specifications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

A. The Specifications Provided To SDC Were Not Design Specifications And Were Not Defective . . . . . . . . . . . . . . . . . . . 8

B. The Specifications In SDC's Contract Were Performance Specifications Which Do Not Implicate Any Implied Warranty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV. The Government Did Not Interfere With SDC's Performance . . . . . 12

V. The Government Did Not Act In Bad Faith . . . . . . . . . . . . . . . . . . . 13

VI. The Government Did Not Fail To Disclose Superior Knowledge To SDC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VII. SDC Is Not Entitled To Recover Damages For Lost Business Opportunities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

## CASES

Am-Pro Protective Agency, Inc. v. United States,
281 F.3d 1234 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Avtel Servs. v. United States,
70 Fed. Cl. 173 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Blake Constr. Co. v. United States,
987 F.2d 743 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

City of Tacoma, Dept of Public Utilities v. United States,
31 F.3d 1130 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Dynalectron Corp. v. United States,
4 Cl. Ct. 424, aff'd,
758 F.2d 665 (Fed. Cir. 1984) (Table) . . . . . . . . . . . . . . . . . . . . . . . . 3

GAF Corp. v. United States,
932 F.2d 947 (Fed. Cir.), cert. denied,
502 U.S. 1971 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 31

Galen Med. Assocs. v. United States,
369 F.3d 1324 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Hercules, Inc. v. United States,
516 U.S. 417 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Inland Container, Inc. v. United States,
512 F.2d 1073, 1080 (Ct. Cl. 1975) . . . . . . . . . . . . . . . . . . . . . . . . 7

J.D. Hedin Constr. Co. v. United States,
347 F.2d 235, 241 (Cl. Ct. 1965). . . . . . . . . . . . . . . . . . . . . . . . . . 9

J.L. Simmons Co. v. United States,
188 Ct. Cl. 684 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

Mingus Constructors v. United States,
812 F.2d 1387 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Olin Jones Sand Co.,
225 Ct. Cl. 741 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

PCL Constr. Servs. v. United States,
47 Fed. Cl. 745 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

Reliance Insurance Co. v. United States,
931 F.2d 863 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

SMS Data Products Group, Inc. v. United States,
19 Cl. Ct. 612 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Stuyvesant Dredging Co. v. United States,
834 F.2d 1576 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Tecom, Inc. v. United States,
66 Fed. Cl. 736 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

TVA v. United States,
60 Fed. Cl. 665 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Utility Contractors, Inc. v. United States,
8 Cl. Ct. 42 (1985), aff'd 790 F.2d 90 (Fed. Cir.) cert. denied,
479 U.S. 827 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Western Empire Constructors, Inc. v. United States,
20 Cl. Ct. 668 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

William Green Constr. Co. v. United States,
477 F.2d 930 (Ct. Cl. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## STATUTES AND REGULATIONS

41 U.S.C. § 609(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **SYSTEMS DEVELOPMENT CORP.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 06-232C** |
| | ) | **(Judge Baskir)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

The United States opposes plaintiff Systems Development Corp.'s, ("SDC") cross motion and replies to SDC's opposition to the Government's motion to dismiss. SDC does not identify any material issues genuinely in dispute, and indeed, by purportedly cross moving for summary judgment, concedes that there are no disputed material facts.[1] The United States

[1] It is difficult to discern exactly what SDC is saying in the document it filed in response to the Government's motion for summary judgment. SDC titled the first part of the document as its "cross motion for summary judgment," but that consists of only six paragraphs of SDC's legal conclusions. It therefore fails to meet the standards or requirements provided in Rule of the Federal Court of Claims ("RCFC") 56, as well as the Court's Special Procedures Order entered in this case on April 21, 2006. Additionally, the deadline for filing dispositive motions in this case was July 9, 2007, therefore plaintiff's motion is untimely.

Technical problems aside, SDC fails as a matter of substantive law to provide any argument or supporting legal authority for its bald claim that it is entitled to summary judgment, and SDC's cross motion should be denied.

opposes SDC's cross motion because SDC is not entitled to judgment in its favor as a matter of law.

The contract between SDC and the United States was a firm-fixed-price supply contract for 22 circuit card assemblies per year, for a base year and five option years. The total contract price, including all option years, was $430,000. It is undisputed that SDC utterly failed to supply the Government with anything. The contract was terminated for the convenience of the Government, and SDC was paid $403,463 at the time of termination. Despite having received almost the entire value of the contract for not supplying a single unit to the Government, SDC now contends that it is entitled to millions of dollars in damages. For the reasons set forth below, the United States has paid SDC everything to which it is entitled pursuant to the termination for convenience provisions in the contract, and is entitled to judgment as a matter of law that it is not liable to SDC for any further damages.

In support of our motion, we rely upon plaintiff's amended complaint, the following brief, the consolidated statement of uncontroverted facts, and the appendix supporting the consolidated statement of uncontroverted facts.

## I. This Court Lacks Jurisdiction To Consider SDC's Claims For Breach Of Contract Because The Claims Were Never Presented In A Certified Claim To A Contracting Officer

SDC's claims for breach of contract are not properly before this Court. Excepting the proposed claim for settlement costs, SDC never submitted a written claim to any contracting officer concerning the allegations contained in its amended complaint, and no final decision on them has been rendered. This Court, therefore, lacks jurisdiction to consider SDC's claims for breach of contract damages.

This is a Court of limited jurisdiction. Dynalectron Corp. v. United States, 4 Cl. Ct. 424, 428, aff'd, 758 F.2d 665 (Fed. Cir. 1984)(Table). In order properly to invoke this Court's jurisdiction, the plaintiff must comply with all statutory requirements in order to bring its claim within the Government's limited waiver of sovereign immunity. Here, SDC was required to present all of its claims in a certified claim to the contracting officer. SDC has not given the contracting officer a clear and unequivocal written demand that gives the contracting officer adequate notice of the basis and amount of the claim, which is a prerequisite to invoking the jurisdiction of this Court. Mingus Constructors v. United States, 812 F.2d 1387, 1395 (Fed. Cir. 1987).

SDC claims that it submitted certified proposals to the contracting officer on "several" occasions after the contract was terminated. Plaintiff's Brief ("Pl. Br.") 6-7. It further asserts, without citing to any supporting legal authority, that these proposals were "sufficient to satisfy the jurisdictional requirements of the Tucker Act." Id. 7. In fact, however, a review of the "proposals" submitted by SDC reveals that this is not the case. All of SDC's post-termination proposals were settlement proposals related to the termination for convenience. Joint Appendix ("JA") 350-360, 489-498, 499-529, and 538-551. The document found at pages 524 through 529 of the joint appendix purports to be a letter dated November 22, 2004, from SDC to the termination contracting officer. This letter does not constitute a certified claim for the damages asserted by SDC such as would support a finding that this Court possesses jurisdiction to entertain SDC's claims because it contains neither a request for final decision, nor a certification that it was made in good faith. 41 U.S.C. § 609(a).

More importantly, SDC never made claims to the contracting officer for damages exceeding $7 million for lost profits, loss of company, increases in General and Administrative costs, lease payments to Teledyne Brown Engineering, Inc., and unspecified employment costs and litigation expenses. None of these theories, nor this evidence, was presented to the

contracting officer, and SDC does not claim that it was. CSUF ¶¶ 40, 41. Therefore, these claims are not properly before the Court and should be dismissed. City of Tacoma, Dept of Public Utilities v. United States, 31 F.3d 1130 (Fed. Cir. 1994). In SMS Data Products Group, Inc. v. United States, 19 Cl. Ct. at 616, this Court's predecessor denied recovery where the plaintiff claimed lost profits before the Court, but had claimed only compensatory damages in the claim submitted to the contracting officer.

SDC argues that it provided a list of documents with one of its termination for convenience proposals, and that this constitutes sufficient notice to support a finding of jurisdiction. Pl. Br. 13. SDC notes that its April 23, 2004 submission proposed a settlement of $789,058, and that this proposal "generally included contemplated payments" for specialized parts that could only be used for this contract. Id. at 13-14. Additionally, SDC points to the November 12, 2004 settlement proposal in which it requests an equitable adjustment based on a constructive change in the contract. Pl. Br. 14. While it is true that the November 12, 2004 letter refers to SDC's defective specification theory of recovery, it requests only an equitable adjustment, in the amount of $617,641. JA 489. This is insufficient to constitute a certified claim for millions of dollars in contract

damages. In Reliance Insurance Co. v. United States, 931 Fed. 2d 863, 865 (Fed. Cir. 1991), the Federal Circuit held:

> No claims that the Government breached the contract or its duty of good faith are properly before this court. Reliance only submitted to the contracting officer claims for equitable adjustment to the contract. Reliance did not submit to the contracting officer a clear and unequivocal claim that the VA breached the contract or its duty of good faith.

Id.

On this basis, the court in Reliance concluded that the Government had not waived its sovereign immunity with respect to the plaintiff's breach claims, and therefore the court did not possess jurisdiction to consider those claims. Id.

Like the plaintiff in Reliance, SDC did not submit a claim pursuant to the CDA concerning the theory of recovery it now asserts. SDC has therefore not met the jurisdictional prerequisites of this Court and the Court lacks subject matter jurisdiction to entertain its complaint. Accordingly, the complaint should be dismissed.

## II. The Termination For Convenience Clause Provides SDC's Only Remedy Under The Contract

It is undisputed that SDC requested that this contract be terminated for convenience, that the contract was terminated for convenience, and that SDC submitted a claim pursuant to the termination for convenience, and

was paid its costs incurred in performing under the contract. CSUF ¶¶ 13, 33, 103, 122.

As we established in our opening brief, this contract contained the termination for convenience clause, FAR § 52.249-02. CSUF ¶ 41. Thus, SDC does not have a breach claim, but is limited to its remedies under the contract, which do not include the myriad of breach damages alleged here by SDC. Inland Container, Inc. v. United States, 512 F.2d 1073, 1080 (Ct. Cl. 1975); Nesbitt v. United States, 345 F.2d 583, 585 (Ct. Cl. 1965).

SDC makes no attempt to refute this argument, thereby acknowledging that the terms of the contract contain the grounds for denying all of SDC's claims for further recovery. Instead, SDC seeks to sow confusion by larding the record with innumerable irrelevant and confusing facts, and repeating its meritless arguments that it is entitled to millions of dollars in contract breach damages. The Court's judgment should not be clouded by SDC's efforts at obfuscation, but should instead recognize that SDC had a contract terminated for convenience and has received all appropriate recovery under the terms of its contract.

## III. The Government Did Not Provide SDC With Defective Specifications

With the exception of its claim for additional termination for convenience damages, all of SDC's claims are, variations on the theme of defective specifications. SDC basic claim is that the Government breached the implied warranty that its specifications were acceptable. SDC then expands this argument by restating it but calling it something else. According to SDC the Government:

- acted in bad faith because it provided SDC with purportedly defective specifications;

- breached the duty of fair dealing because it provided SDC with defective specifications;

- failed to disclose its superior knowledge that the specifications were defective; and,

- is liable to SDC it for millions of dollars in lost business opportunities because of providing these same purportedly defective specifications.

### A. The Specifications Provided To SDC Were Not Design Specifications And Were not Defective

The specifications the Government provided to SDC were not defective, they are the same specifications that Raytheon has used for years to produce the HAWK circuit card assemblies. A true "defective

specification," for which the Government may be liable, is a design specification that has proven impossible to perform, not simple discrepancies in contract documents that are resolved with RFIs and clarifications or simple contract adjustments. See PCL Constr. Servs., 47 Fed. Cl. 745, 796 (2000); Hercules v. United States, 516 U.S. 417 (1996); Stuyvesant Dredging Co. v. United States, 834 F.2d 1576, 1582 (Fed. Cir. 1987); J.D. Hedin Constr. Co. v. United States, 347 F.2d 235, 241 (Cl. Ct. 1965); Utility Contractors, Inc. v. United States, 8 Cl. Ct. 42, 50 (1985), aff'd 790 F.2d 90 (Fed. Cir.), cert. denied, 479 U.S. 827 (1986); J.L. Simmons Co. v. United States, 188 Ct. Cl. 684 (1969).

Here, SDC admits that the specifications it was provided have been used by Raytheon for years to supply these same circuit cards. Pl. Br. at 38. SDC's argument that only Raytheon could supply these parts is also an admission by SDC that Raytheon can and has used these same specifications to supply the items to the Government for years. Id.

Thus, even assuming SDC were correct in characterizing the specifications as design specifications, it is undisputed that the specifications were not defective.

B. The Specifications In SDC's Contract Were Performance Specifications Which Do Not Implicate Any Implied Warranty

SDC's claim that the Government has admitted in its answer to the amended complaint that SDC's had a "build-to-print" contract, and therefore design specifications, is completely false. Pl. Br. 25. In its answer, the Government merely stated that the contract was the best evidence of its contents. It is telling that SDC does not point to any content of the contract that supports its position, it merely attempts a semantic game with the Government's answer.

SDC cannot escape the fact that to the extent SDC's supply contract contained specifications, they were performance specifications that merely identified the part to be supplied.

> Performance specifications "set forth an objective or standard to be achieved, and the successful bidder is expected to exercise his ingenuity in achieving that objective or standard of performance, selecting the means and assuming a corresponding responsibility for that selection." . . . Design specifications, on the other hand, describe in precise detail the materials to be employed and the manner in which the work is to be performed. The contractor has no discretion to deviate from the specifications, but is "required to follow them as a road map."

Blake Construction Co. v. United States, 987 F.2d 743 (Fed Cir. 1993)(quoting J.L. Simmons v. United States, 188 Ct. Cl. 684 (1969)), cert. denied, 510 United States 963 (1993).

The implied warranty that satisfactory contract performance will result from adherence to the specifications applies only to “design specifications.” Id. The principle is, then, that when the Government imposes such "design" requirements and the contractor complies, the Government is, rightly, bound to accept what the specification that it mandated produces. Id.

It is the contract’s provisions, and the amount of discretion that the contract affords the contractor – not labels urged by lawyers – that govern whether the contractor can recover for problems that occurred during performance. Blake Construction Co. v. United States, 987 F.2d 743, 746 (Fed. Cir. 1993). The fact that the specifications may have provided some details concerning how the work was to be performed does not convert what would otherwise be a performance specification into a design specification. PCL, 47 Fed. Cl. at 796.

Here, the contract contains no directions whatsoever, merely an identification of the part to be delivered by SDC, and a list of standard parts to be used to assemble the circuit card assemblies. CSUF ¶ 1.

As noted in our opening brief, the only contract term in Section C of the contract, titled "Description/Specification/Work Statement," is a reference to 52.209.4716 of the FAR, which describes the standard to be used for soldered electrical and electronic assemblies. App. 11. Otherwise, the contract provides that SDC is to supply 2 First Articles of the part, identified by National Stock Number ("NSN"), and described as circuit card assemblies. CSUF ¶ 1. The contract then requires SDC to deliver 22 circuit card assemblies in the first year, and provides the Government with five option years. Id.

The contract also incorporates a Technical Data Package ("TDP") which is a list of parts to be used to assemble the circuit card assemblies. App. 28-36. Nowhere in the contract are there even general instructions to SDC relating to the method or means of supplying the items required under the contract.

IV. The Government Did Not Interfere With SDC's Performance

SDC cannot establish that the Government interfered with SDC's ability to perform the contract. Indeed, rather than attempting to interfere with SDC's supposed attempts to perform, the Government made repeated attempts to assist SDC. SDC acknowledges that the Government attempted to work with it. CSUF ¶ 97. Additionally, Jerry

Tignor testified at his deposition that he obtained programmed chips, and delivered them personally to SDC's headquarters although SDC refused even to attempt to use them. CSUF ¶¶ 49-51. Therefore, the undisputed facts do not support SDC's claim that the Government interfered with SDC's ability to perform its contract, and this claim should be denied.

V. The Government Did Not Act In Bad Faith

Government officials are presumed to act in good faith. See Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239 (Fed. Cir. 2002). SDC contends that the "clear and convincing" standard" no longer applies to the presumption of good faith of Government employees. Moreover, the burden of proof that SDC alleges it must meet has neither legal nor logical support. SDC attempts to employ the decision in Tecom, Inc v. United States, 66 Fed. Cl. 736 (2005), to support its distinction that a clear and convincing standard of proof as instructed by this Court is not applicable to its allegation of a breach of the duty of good faith and fair dealing implied in this contract. App. Br. at 51. But, to prove a breach of that implied duty, SDC must first overcome the presumption that the Government officials involved acted in good faith. See Galen Med. Assocs. v. United States, 369 F.3d

1324, 1330 (Fed. Cir. 2004); Avtel Servs. v. United States, 70 Fed. Cl. 173, 222 (2005); Short Bros., PLC v. United States, 65 Fed. Cl. 695, 799 (2005); TVA v. United States, 60 Fed. Cl. 665, 671-72 (2004).

More importantly, SDC makes no effort to explain why the result would be different under a preponderance of the evidence standard. SDC has not proved a breach of the duty of good faith and fair dealing even under a preponderance of the evidence standard. Therefore it still cannot prevail. Regardless of the applicable evidentiary standard, SDC has submitted no evidence whatsoever that anyone in the Government acted in bad faith either in awarding the contract to SDC or in attempting to resolve SDC's problems with performance.

As we established in our opening brief, SDC has no evidence whatsoever that anyone at AMCOM held malice toward SDC, nor that there was a conspiracy to injure SDC in providing the mylar drawings. Additionally, SDC acknowledges that, at worst, awarding the contract to SDC was a "mistake," not the product of a calculated campaign to injure SDC. CSUF ¶ 113. The claim for bad faith, therefore, fails as a matter of law, and the Court should enter judgment in favor of the Government upon Count III of the Complaint.

## VI. The Government Did Not Fail To Disclose Superior Knowledge To SDC

In order to establish that the Government breached its duty to disclose information to it, SDC must demonstrate: (1) the information was not reasonably available to it prior to bidding upon the contract, Western Empire Constructors, Inc. v. United States, 20 Cl. Ct. 668, 673-74 (1990); (2) the company undertook to perform its contractual obligations without vital knowledge of a fact that affects performance costs or direction, (3) the Government was aware that SDC had no reason to obtain such information, (4) any contract specification supplied misled the contractor, or did not put it upon notice to inquire, and (5) the Government failed to provide the relevant information. GAF Corp. v. United States, 932 F.2d 947, 949 (Fed. Cir.), cert. denied, 502 U.S. 1971 (1991).

As we established in our opening brief, the Government believed that it had paid Raytheon for Level III documentation for the HAWK circuit cards. Government's Motion 29-30. Therefore, at the time the contract was awarded to SDC, the Government had good reason to believe that it would not have difficulty obtaining the electronic PROM data from Raytheon and no reason to disclose the "unavailability" of the data to SDC, nor to disclose that only Raytheon could produce the part.

Moreover, as we note above, SDC concedes that the decision to award the contract was a "mistake," and not the product of a conscious decision to withhold information from SDC. CSUF ¶ 113.

## VII. SDC Is Not Entitled To Recover Damages For Lost Business Opportunities

It is undisputed that SDC claims damages for loss of business value, lost business opportunities, and lost profits. CSUF ¶ 43. Despite plaintiff's attempt to characterize these claims as the "natural and probable consequence of the breach complained of," they are mere speculation and are not allowable as a matter of well-settled law. William Green Constr. Co. v. United States, 477 F.2d 930 (Ct. Cl. 1973); Olin Jones Sand Co., 225 Ct. Cl. 741, 743 (1980). The mere fact that someone SDC claims to be an "expert" has calculated the alleged damages amounts does not transform them into anything this Court can or should award. This is particularly true where SDC claims the damages should be allowable as a "natural and probable consequence of the breach," but SDC's expert himself testified that he had basically no idea of the actual facts of this case. CSUF ¶¶ 41-42.

SDC's claim is one upon which recovery is unavailable as a matter of law and should be denied. At the time this contract was awarded, it was not known to the Government that there would be difficulty

obtaining the electronic PROM data from Raytheon. Therefore, the Government cannot be faulted for not disclosing it to SDC. Jerry Tignor testified at his deposition that the Government had paid Raytheon for Level III documentation for this technology which means that Raytheon will provide everything necessary to allow for public competition. CSUF ¶ 53. The Government, therefore, had every reason to expect the PROM data to be provided from Raytheon without difficulty. Therefore, it had no reason either to disclose the "unavailability" of the data to SDC, nor to disclose that only Raytheon could produce the part.

## **CONCLUSION**

For these reasons, defendant respectfully requests that the Court grant summary judgment in favor of defendant and dismiss plaintiff's complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

OF COUNSEL:

STEPHEN F. PEREIRA
Defense Contract
Management Agency

/s/ Joan M. Stentiford
JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street
Washington, D.C. 20530
Tele: (202) 616-0341
Fax: (202) 514-8624

October 22, 2007

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 22nd day of October, 2007, the foregoing "DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS OR ALTERNATIVELY, FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

__/s/ Joan M. Stentiford___

JOAN M. STENTIFORD