# DEFENSE CONTRACT AUDIT AGENCY

# AUDIT REPORT NO. 01201– 2004J17100001

July 15, 2004

**PREPARED FOR:** Termination Contracting Officer
Defense Contract Management Agency Atlanta
ATTN: DCMAE-GATC / Mr. Paul E. Slemons
2300 Lake Park Drive, Suite 300
Smyrna, Georgia 30080-4091

**PREPARED BY:** DCAA Huntsville Branch Office
620 Discovery Drive
Building II, Suite 300
Huntsville, Alabama 35806-2816
Telephone No. (256) 842-7700
FAX No. (256) 842-9184
E-mail Address dcaa-fao1201@dcaa.mil

**SUBJECT:** Audit of Contractor's Termination Settlement Proposal for Contract No. DAAH01-00-C-0077

**REFERENCES:** TCO: Contract No. DAAH01-00-C-0077
Relevant Dates: See Page 13

**CONTRACTOR:** Systems Development Corporation
225 Spragins Street, Suite G
Huntsville, Alabama 35806

**REPORT RELEASE RESTRICTIONS:** See Page 14

**CONTENTS:**

| | Page |
|---|---|
| Subject of Audit | 1 |
| Executive Summary | 1 |
| Scope of Audit | 1 |
| Results of Audit | 3 |
| Contractor Organization and Systems | 12 |
| DCAA Personnel and Report Authorization | 13 |
| Audit Report Distribution and Restrictions | 14 |
| Audit Report No 1201-2004J17100002 | 15 |

## SUBJECT OF AUDIT

As requested in your letter dated May 17, 2004, we examined the Systems Development Corporation's (SDC) April 23, 2004 termination for convenience settlement proposal in the amount of $789,058. Contract DAAH01-00-C-0077 was terminated for convenience on February 17, 2004. The termination settlement proposal was submitted on the inventory basis. The contract, in the amount of $430,000 was for providing the material to fabricate, assemble, and deliver 129 HAWK Circuit Cards and associated receiving, inspection and kitting (and the prime contractor issued one major subcontract to Teledyne Brown Engineering for $403,298). The purpose of the examination is to determine if the proposed contract costs are acceptable as a basis for negotiation.

The termination settlement proposal and related cost or pricing data are the responsibility of the contractor. Our responsibility is to express an opinion on the termination settlement proposal based on our examination.

## EXECUTIVE SUMMARY

Our examination of the $789 thousand termination settlement proposal disclosed the proposal is not acceptable for negotiation of a fair and reasonable price. Nevertheless, we evaluated the proposal at the TCO's request. The following significant issues should be considered in the negotiation process.

SIGNIFICANT ISSUES:

1. The results are limited because (i) we have not received our requested technical analysis and the Inventory Verification Report and (ii) the contractor is in noncompliance with FAR 49.104.
2. The contractor based its proposed Other Costs and G&A expense on unsupported judgmental estimates and computations, resulting in FAR noncompliances.

## SCOPE OF AUDIT

Except for the limitations discussed below, we conducted our examination in accordance with generally accepted government auditing standards. Those standards require that we plan and perform the examination to obtain reasonable assurance that the termination settlement proposal is free of material misstatement. An examination includes:

- evaluating the contractor's internal controls, assessing control risk, and determining the extent of audit testing needed based on the control risk assessment;
- examining, on a test basis, evidence supporting the amounts and disclosures in the termination settlement proposal;
- assessing the accounting principles used and significant estimates made by the contractor;

- evaluating the overall termination settlement proposal presentation; and
- determining the need for technical specialist assistance and quantifying the results of a Government technical evaluation.

We evaluated the proposed cost examined using the applicable requirements contained in the:

- Federal Acquisition Regulation (FAR), including Part 49, Termination of Contracts
- Defense FAR Supplement (DFARS), and
- Contract Terms.

The contractor claims exemption under 48 CFR 9903.201-1(b)(3) from the practices required by the Cost Accounting Board rules and regulations because it considers itself a small business concern.

We consider SDC's accounting system to be adequate for accumulating and billing costs on Government contracts. We have not specifically examined SDC's estimating system and the related internal controls (see Contractor Organization and Systems section). The scope of our examination reflects this assessment of control risk and includes those tests of compliance with applicable laws and regulations that we believe provide a reasonable basis for our opinion.

LIMITATIONS

1. On June 15, 2004 we requested a Technical Evaluation Report and a copy of the Inventory Verification Report from the Termination Contracting Officer (TCO). We were informed that neither report would be available to us prior to the issuance of our audit report. Therefore, our report is limited because we are unable to confirm that the proposed kinds, quantities and condition of purchased parts are representative of those required by the contract and in the possession of the subcontractor.

2. On July 12, 2004, we confirmed with the Terminating Contracting Officer that no decision has been made regarding the disposition of the termination inventory. As such, we cannot reach a definitive conclusion regarding any potential offset should the Government decide it does not need the inventory. If a decision is made as to the disposition of the inventory, contact the auditor so that an impact on the results of audit can be determined. Upon receipt of this information, we will issue a supplemental report if the impact is significant and it would be useful at negotiations.

3. Although SDC promptly provided notice of termination to its subcontractor, TBE, it has not complied with the requirements of FAR 49.104(g) which states, "Settle outstanding liabilities and proposals arising out of termination of subcontracts, obtaining any approvals of ratifications required by the TCO; ...." It is our understanding that SDC has not made any settlement with its subcontractor, TBE, nor has it submitted a subcontractor settlement to the Terminating Contracting Officer for ratification. Refer to Note 7 of this report for more information concerning the subcontractor settlement amounts. The results of the settlement are essential to the conclusion of this audit. Therefore, the audit results are limited to the extent that additional

costs may be questioned based on the results of the settlement proceedings. Upon receipt of notification of the settlement and ratification, we will provide a supplemental report if contract negotiations have not been concluded and the supplemental report would serve a useful purpose.

## RESULTS OF AUDIT

In our opinion, as a result of the limitations above, the cost or pricing data submitted by the offeror are not adequate (see comments in Notes 2–5 and Note 7). The proposal was not prepared in accordance with appropriate provisions of FAR including Part 49, Termination of Contracts and the Defense FAR Supplement (see comments in Notes 2-5 and Note 7). Because the noncompliances and inadequacies are considered significant, we do not believe the proposal is an acceptable basis for negotiation of a fair and reasonable price, as discussed with Mr. Paul Slemons, TCO, by Mr. Robert McCracken of our office on July 8, 2004, and as confirmed in our e-mail to you dated July 8, 2004. To make the cost or pricing data adequate, the offeror must include only allowable, allocable and reasonable cost in its settlement proposal, as well as comply with the requirements of FAR 49.104. At your request, we have, nevertheless, evaluated the proposal to the extent possible under the circumstances. Nevertheless, in our opinion, the technical evaluation and inventory verification reports discussed in the Limitations section of the report are significant enough to materially impact the results of audit. Therefore, we recommend that termination settlement negotiations not be concluded until results of the technical evaluation and inventory verification reports are considered by the termination contracting officer.

We discussed the factual matters concerning our findings with Ms. Virginia Gilchrist and Mr. Gilliam Carpenter, Contracts Administrator throughout the course of the audit and at our exit conference on July 8, 2004. We did not provide the dollar impact of our findings. The contractor disagreed with our findings, but provided no additional comments. The results of our audit findings are provided in the following table and explanatory notes:

| | Proposed | Questioned | Difference (Note 1) | Ref |
|---|---|---|---|---|
| Metals | $ 0 | $ 0 | $ 0 | |
| Raw Materials | 0 | 0 | 0 | |
| Purchased Parts On Hand | 321,497 | 321,497 | 0 | 2 |
| Finished Components | 0 | 0 | 0 | |
| Miscellaneous Inventory | 0 | 0 | 0 | |
| Work-in-Process | 0 | 0 | 0 | |
| Special Tooling and Test Equipment | 0 | 0 | 0 | |
| Other Costs | 19,303 | 19,303 | 0 | 3 |
| General and Administrative Expenses | 297,500 | 242,162 | 55,338 | 4 |
| Subtotal: | $ 638,300 | $ 582,962 | $ 55,338 | |
| Profit | 63,830 | 63,830 | 0 | 5 |
| Settlement Expenses | 14,316 | 0 | 14,316 | 6 |
| Total | $ 716,446 | $ 646,792 | $ 69,654 | |
| Settlements With Subcontractors | 72,612 | (319,301) | 391,913 | 7 |
| Acceptable Finished Product | 0 | 0 | 0 | |
| Gross Settlement | $ 789,058 | $ 327,491 | $ 461,567 | |
| Disposal and Other Credits | 0 | 0 | 0 | |
| Net Proposed Settlement | $ 789,058 | $ 327,491 | $ 461,567 | |
| Advance, Progress & Partial Payments | 0 | 0 | 0 | |
| Net Payment Requested | $ 789,058 | $ 327,491 | $461,567 | |
| Adjustment for Loss Ratio | | | (85,962) | 8 |
| Net Amount | | | $375,605 | |

Explanatory Notes

1. Difference

The amounts in this column are presented solely for the convenience of the termination contracting officer in developing its negotiation objective. They represent only the arithmetic difference between amounts proposed and related questioned cost. You should not consider the amounts to be audit approved or recommended amounts. DCAA does not approve, or recommend prospective costs because the amounts depend partly on factors outside the realm of accounting expertise, such as opinions on technical and production matters.

2. Purchased Parts

a. Summary of Conclusions:

We questioned the $321,497 cost of purchased parts in its entirety, because these costs should be considered as part of a settlement with a subcontractor, Teledyne Brown Engineering (TBE). As such we have reclassified and evaluated these costs in Note 7.

b. Basis of Contractor's Cost:

The basis for the contractor's proposed cost for purchased parts is from cost or pricing data in the subcontractor termination settlement proposal submitted by Teledyne Brown Engineering.

c. Audit Evaluation:

After we determined that the $321,497 proposed was based solely on the subcontractor termination settlement proposal, we reclassified the costs as "settlement with subcontractor." See Note 7.

d. Contractor's Reaction:

The contractor disagreed with our findings.

3. <u>Other Costs</u>

a. Summary of Conclusions:

We questioned the proposed Other Costs of $19,303 in their entirety. The costs are not settlement costs; they represent normal procurement related G&A activities incurred on the contract which should be recouped from the normal application of the G&A rate. Also, the claimed labor hours are based on the contractor's unsupported, judgmental estimates. We further consider the labor hours claimed to be unreasonable/excessive.

During the four years this program was in progress prior to termination, SDC has not established a job cost number for this project, nor has it charged any direct cost for this program to a specific job/project within its cost accounting records. SDC's established practice is to include procurement-related functions and activities such as those claimed here in its G&A pool. These costs are allocated to final projects/final cost objectives using a total cost input base. In its claimed G&A expense (see note 4 below), the contractor claimed its normal G&A expenses.

While FAR 31.205-42 allows, as termination settlement expenses, expenses which are normally indirect costs, the claimed costs are not termination settlement expenses. They represent the contractor's normal procurement activity incurred for the contract. Consequently, direct charging these expenses results in duplication of cost claimed. It is also in noncompliance with FAR 31.202 which states in part, "... No final cost objective shall have allocated to it as a direct cost any cost, if other costs incurred for the same purpose in like circumstances have been included in any indirect cost pool to be allocated to that or any other final cost objective."

b. Basis of Contractor's Cost:

The contractor proposed the labor cost of a buyer (500 hours), procurement clerk (147 hours) and a data entry clerk (200 hours) as Other Cost. These functions that are normally recorded as G&A expense in the contractor's books and records. The contractor asserts these are judgmental estimates.

c. Audit Evaluation:

We questioned the $19,303 Other Cost because it represents the cost of functions that are normally recorded as G&A expense in the contractor's books and records for routine activities. Charging these routine indirect costs as direct effort in the performance of the contract is in noncompliance with FAR 31.202 and will result in double counting of this cost on other contracts. A review of the contractor's job cost ledger indicates that no costs have been recorded or incurred during the four years of contract performance prior to termination. The contractor's representative could not provide any supporting evidential matter for the hours proposed; it did not provide any timesheets, logs, etc. In our opinion, the hours appear excessive and unreasonable since this generally indirect activity resulted in only the issuance of an original and a revised purchase order to its subcontractor, TBE, who purchased all of the required parts.

d. Contractor's Reaction:

The contractor disagreed with our findings.

4. <u>General and Administrative Expenses</u>

a. Summary of Conclusions:

We questioned the $242,162 of proposed G&A expense. The proposed costs are not settlement costs; they represent normal indirect G&A activities incurred on the contract which should be recouped from the normal application of the G&A rate. Also, the claimed labor hours are based on the contractor's unsupported judgmental estimates. We further consider the labor hours claimed to be unreasonable/excessive.

During the four years this program was in progress prior to termination, SDC has not established a job cost number for this project, nor has it charged any direct cost for this program to a specific job/project within it cost accounting records. SDC's established practice is to include indirect G&A functions and activities such as those claimed here in its G&A pool. These costs are allocated to final projects/final cost objectives using a total cost input base. In its claimed G&A expense (see note 4 below), the contractor claimed its normal G&A expenses.

While FAR 31.205-42 allows, as termination settlement expenses, expenses which are normally indirect costs, the claimed costs are not termination settlement expenses. They represent the contractor's normal indirect G&A activity incurred for the contract. Consequently, direct charging these expenses results in duplication of cost claimed. It is also in

noncompliance with FAR 31.202 which states in part, "... No final cost objective shall have allocated to it as a direct cost any cost, if other costs incurred for the same purpose in like circumstances have been included in any indirect cost pool to be allocated to that or any other final cost objective."

Our analysis of the most recently completed fiscal year indicates a G&A rate of 14.12 percent. This rate should be applied to the settlement with subcontractor costs of $391,913 for a recoverable amount of $55,338. As discussed in the Limitations paragraph, SDC has not reached a final settlement with its subcontractor, TBE; and as such, the amount to be G&A considered recoverable may change depending upon the resolution of this limitation. If any of the $391,913 amount reported settlement with subcontractor costs are not considered by the prime to be recoverable, then the associated G&A at 14.12 percent should also be removed from the contractor's settlement proposal.

b. Basis of Contractor's Cost:

The contractor proposed the labor cost of an Executive (2000 hours) and a Contract Administrator (2000 hours) as G&A expense. The contractor calculated the cost of this burdened labor as a direct charge for performance on the contract. The contractor multiplied 2000 hours times the labor rate for each labor category to come up with a total direct labor cost of $160,000. The contractor then burdened the direct labor cost with a direct labor overhead rate of 46 percent ($73,600) and then burdened labor and overhead cost with a G&A rate of 10.18 percent ($23,780) to arrive at total burdened labor cost of $257,380, Further, the contractor added to the $257,380 of proposed burdened labor, G&A expense of $40,120, which represents the G&A rate of 10.18 percent applied to total subcontractor cost of $394,109.

c. Audit Evaluation:

We questioned the proposed $297,500 of G&A expense because it represents the cost of functions that are normally recorded as G&A expense in the contractor's books and records for routine activities. Charging these routine indirect costs as direct effort in the performance of the contract is in noncompliance with FAR 31.202 and will result in double counting of this cost on other contracts. A review of the contractor's job cost ledger indicates that no costs have been recorded or incurred during the four years of contract performance prior to termination. The contractor's representative could not provide any supporting evidential matter for the hours proposed; it did not provide any timesheets, logs, etc., that directly identified chares to this contract. In our opinion, the hours appear excessive and unreasonable since this generally indirect activity resulted in only the issuance of an original and a revised purchase order to its subcontractor, TBE, who purchased all of the required parts. A review of the most recently completed fiscal year (2003) reflects a G&A rate of 14.12 percent. We also noted that for 2004, the interim rate appears to be approximately 21 percent. We believe use of the 14.12 percent is appropriate; and it should be applied to the amount finalized for settlement with subcontractors. Currently, based on Audit Report No. 1201-2004J17100002, the settlement with subcontractor is $391,913.

d. Contractor's Reaction:

The contractor disagreed with our findings.

5. Profit

a. Summary of Conclusions:

Based on our examination, it appears the contract is in a loss position; therefore, we have questioned all of the proposed profit based on FAR 49.203(a), which states "In the negotiation or determination of any settlement, the TCO shall not allow profit if it appears that the contractor would have incurred a loss had the entire contract been completed."

b. Basis of Contractor's Cost:

The contractor applied a 10 percent profit rate to its total contract cost to compute its proposed profit of $63,830 ($638,300 x 10 percent).

c. Audit Evaluation:

The contractor reported an estimated cost at completion (EAC) of $507,837. Our audit evaluated EAC is $532,304. The increase in EAC from $507,837 to $532,304 is the result of two adjustments. First, SDC reported an EAC for the subcontract with TBE of $397,773; however, the purchase order value is $403,298. Additionally, we adjusted the G&A rate to reflect the 14.12 percent for the most-recently completed fiscal year. The contract price is $430,000. Because the estimate at completion is in excess of the contract price, the contract is in a loss position and FAR 49.203(a) precludes recovery of profit in a termination if this condition exists.

d. Contractor's Reaction:

The contractor disagreed with our findings.

6. Settlement Expenses

a. Summary of Conclusions:

Based on our examination, we find no basis to take exception to the proposed settlement expenses.

b. Basis of Contractor's Cost:

The contractor made a judgmental estimate of the hours required for settlement of the termination, including negotiations. SDC multiplied the labor rates of the Executive and Contracts Administrator times a total of 230 hours (105 for Executive and 125 for Contracts

Administrator) to arrive at estimated labor cost and burdened it to arrive at the estimated settlement expense.

c. Audit Evaluation:

Using the criteria contained in FAR 31.205-42(g), we reviewed the items proposed by the contractor for settlement expenses. Our review disclosed that the costs are of the type and nature considered in FAR 31.205-42(g). We verified the labor rates. We believe the hours proposed appear reasonable.

d. Contractor's Reaction:

The contractor deferred comment on our findings.

7. Settlements With Subcontractors

a. Summary of Conclusions:

Based on our examination, we have determined that the prime contractor, SDC, has not reached any settlement with its primary subcontractor, Teledyne Brown Engineering (TBE). We have evaluated TBE's subcontractor termination settlement proposal under Audit Report No. 1201-2004J17100002, dated July 13, 2004 (see the Appendix). As a result of that examination, we questioned $2,196 of the proposed amount of $394,109. The $394,109 ties to the subcontractor's claim and includes the $321,497 claimed as purchased parts (see Note 2 above), plus the $72,612 claimed as settlements with subcontractors. Our examination disclosed that the subcontractor, TBE, has possession of the purchased parts.

b. Basis of Contractor's Cost:

The contractor's proposed amount for settlements with subcontractors ($72,612) does not represent a settlement agreement with its subcontractor, TBE, but rather reflects incorporation of TBE's termination settlement proposal amount to SDC. SDC has not performed any review or analysis of the settlement proposal, nor has it been ratified by the terminating contracting officer. Additionally, SDC fragmented the subcontractor's termination settlement proposal and reported $321,497 as Purchased Parts (see Note 2 above) and reported the balance of the proposed cost of TBE labor, ODC, G&A expense and profit as settlement with subcontractors.

c. Audit Evaluation:

We have reclassified the amount reported for Purchased Parts (see Note 2) to this section for a total amount for Settlement With Subcontractors of $394,109, which ties to TBE's termination settlement proposal. We evaluated the termination settlement proposal under Audit Report No. 1201-2004J17100002. We also coordinated with the contractor and confirmed that no specific analysis was performed of the TBE settlement proposal, nor has any settlement been ratified by the Terminating Contracting Officer. It is also our understanding that the

Government has not determined the disposition of the inventory, our results are qualified accordingly.

8. Reduction of Costs for Loss Position

a. Summary of Conclusions:

Except as limited above, based on our examination and application of the loss-factor as described in FAR 49.203(b), we question $85,962 of the reported costs as shown in the schedule below:

| | Proposed | Questioned | Audit Adjusted |
|---|---|---|---|
| Settlements with Subcontractor | $ 394,109 | $ 2,196 | $ 391,913 |
| Other Costs | 19,303 | 19,303 | - |
| G&A | 297,500 | 242,162 | 55,338 |
| Total costs (a) | $ 710,912 | $ 263,661 | $ 447,251 |
| x loss-ratio factor | | | 80.78% |
| Allowable cost multiplied by loss-ratio factor (b) | | | $ 361,289 |
| Unallocable (a) - (b) = (c) | | | $ 85,962 |

* Slight differences occur due to rounding.

b. Basis of Contractor's Proposal:

The contractor termination settlement proposal did not include any reduction in costs even though its contract was in a loss position; therefore, it does not appear to consider the requirements of FAR 49.203(b).

c. Audit Evaluation:

As part of our examination of the profit proposed, we determined that the contract was in a loss position. Therefore, we calculated the loss ratio of 80.78 percent as shown in the table below:

**SDC Termination Loss-Ratio Calculation for Contract No. DAAH01-00-C-0077**

| | |
|---|---|
| Total Contract Price (a) | $430,000 |
| Estimate of Cost at Completion for Contract (b) | $532,304 |
| Loss Ratio Factor (a)/(b) | 80.78% |

We applied the loss-ratio factor to the audit-adjusted costs of $447,251 as shown in the schedule above. FAR 49.203(b) states, "If the settlement is on an inventory basis ... the contractor shall not be paid more than ... (d) The remainder of the settlement amount otherwise agreed upon or determined ... reduced by multiplying the remainder by the ratio of (i) the total contract price to (ii) the total cost incurred before termination plus the estimate cost to complete the entire contract." This contract termination proposal was submitted on the inventory basis, and it is in a loss position as discussed in Note 5 above; therefore, application of this FAR limitation is appropriate and results in an adjustment of $85,962.

d. Contractor's Reaction:

An exit conference was held with contractor personnel on July 8, 2004. They provided no comments to our audit conclusions.

## CONTRACTOR ORGANIZATION AND SYSTEMS

### I. Organization

Systems Development Corporation (SDC), Inc. was incorporated in the State of Alabama in May 1985. The contractor was certified as an woman-owned, 8(a) small disadvantaged business in March 1992. SDC has subsequently graduated from the 8a program and is currently designated as a SBA woman-owned, hubzone business. Systems Development Corporation, Inc. provides expertise in areas of systems development and software engineering. Sales for its fiscal year ended September 30, 2002 were approximately $8.6 million. Sales for fiscal year ended September 2003 were approximately $3.8 million, all from government sales.

### II. Accounting System

Systems Development Corporation utilizes Deltek Accounting Software. Systems Development Corporation maintains job cost accounting systems wherein contracts are assigned individual project numbers that are used to accumulate direct costs. Indirect costs are identified and accumulated by cost pools for each contract or subcontract at the time they are incurred. Contract costs by element are reconciled to general ledger control accounts. The following schedule describes Systems Development Corporation's indirect cost pools and allocation bases:

| Indirect Cost Pool | Allocation Base |
|---|---|
| Contract Overhead | Total direct labor dollars for each contract or subcontract |
| Offsite Overhead | Offsite direct labor dollars |
| General and Administrative | Total cost input |

The contractor's accounting system is considered adequate for the accumulating, reporting, and billing of costs under government contracts. However, the contractor is a small business with limited resources to be applied to compliance procedures and testing.

### III. Billing System

Accounting is responsible for the preparation and submission of invoices that are done manually. Some invoices are prepared through the Deltek. Timesheet data is extracted into spreadsheet form for each contract. All invoices are reviewed and certified by the Accounting Manager. System Development Corporation, Inc prepares invoices monthly. In our opinion, Systems Development Corporation, Inc.'s billing system and related internal control policies and procedures are adequate for the proper preparation of billings under government contracts.

### IV. Estimating System

We have not evaluated the contractor's estimating system and related internal controls.

**Audit Report No. 01201-2004J17100001**

## DCAA PERSONNEL

| | Telephone No. |
|---|---|
| Primary contacts regarding this audit: | |
| Robert F. McCracken, Auditor | (256) 726-2515 |
| William W. Hitt, Supervisory Auditor | (256) 842-7700 ext. 135 |
| Other contact regarding this audit report: | |
| Betty J. King, Branch Manager | (256) 842-7700 ext. 120 |

FAX No.
(256) 842-9184

E-mail Address
dcaa-fao1201@dcaa.mil

General information on audit matters is available at http://www.dcaa.mil/.

## RELEVANT DATES

Request For Audit: TCO – dated May 26, 2004
Due Date Extended: TCO – June 30, 2004
Due Date Extended: TCO – July 15, 2004

**AUDIT REPORT AUTHORIZED BY:**

/signed/
Betty J. King
Branch Manager
DCAA Huntsville Branch Office

## AUDIT REPORT DISTRIBUTION AND RESTRICTIONS

DISTRIBUTION

| | E-mail Address |
|---|---|
| Termination Contracting Officer<br>Defense Contract Management Command Atlanta<br>ATTN: DCMAE-GATC/ Mr. Paul E. Slemons<br>2300 Lake Park Drive, Suite 300<br>Smyrna, Georgia 30080-4091 | paul.slemons@dcma.mil<br><br>Telephone<br>(678) 503-6351 |

Systems Development Corporation
225 Spragins Street, Suite G
Huntsville, Alabama 35801
(Copy furnished thru TCO)

RESTRICTIONS

1. Information contained in this audit report may be proprietary. It is not practical to identify during the conduct of the audit those elements of the data which are proprietary. Make proprietary determinations in the event of an external request for access. Consider the restrictions of 18 U.S.C. 1905 before releasing this information to the public.

2. Under the provisions of Title 32, Code of Federal Regulations, Part 290.7(b), DCAA will refer any Freedom of Information Act requests for audit reports received to the cognizant contracting agency for determination as to releasability and a direct response to the requestor.

3. The Defense Contract Audit Agency has no objection to release of this report, at the discretion of the contracting agency, to authorized representatives of SDC. However, the attached subcontractor assist audit report (Appendix) should not be released to SDC unless it is released in a manner consistent with the subcontractor's Release Statement attached to Audit Report 1201-2004J17100001.

4. Do not use the information contained in this audit report for purposes other than action on the subject of this audit without first discussing its applicability with the auditor.

**Audit Report No. 1201-2004J17100002**
**Subcontractor Termination Settlement Proposal**
**Teledyne Brown Engineering**
**Huntsville, Alabama**
**(follows this cover sheet)**

# DEFENSE CONTRACT AUDIT AGENCY

# AUDIT REPORT NO. 01201–2004J17100002

July 13, 2004

**PREPARED FOR:** Termination Contracting Officer
ATTN: DCMAE-GATC / Mr. Paul E. Slemons
Defense Contract Management Agency Atlanta
2300 Lake Park Drive, Suite 300
Smyrna, Georgia 30080-4091

**PREPARED BY:** DCAA Huntsville Branch Office
620 Discovery Drive
Building II, Suite 300
Huntsville, Alabama 35806-2816
Telephone No. (256) 842-7700
FAX No. (256) 842-9184
E-mail Address dcaa-fao1201@dcaa.mil

**SUBJECT:** Audit of Subcontractor's Termination Settlement Proposal for Subcontract No. SDC006 Under Contract No. DAAH01-00-C-0077

**REFERENCES:** TCO: Contract No. DAAH01-00-C-0077
Relevant Dates: Please Refer to Page 9

**SUBCONTRACTOR:** Teledyne Brown Engineering, Inc.
300 Sparkman Drive
Huntsville, Alabama 35805

**REPORT RELEASE RESTRICTIONS:** Please Refer to Page 10

**CONTENTS:**


| | Page |
|---|---|
| Subject of Audit | 1 |
| Scope of Audit | 1 |
| Results of Audit | 3 |
| Subcontractor Organization and Systems | 12 |
| DCAA Personnel and Report Authorization | 13 |
| Audit Report Distribution and Restrictions | 14 |
| Subcontractor's Release Letter | 11 |

## SUBJECT OF AUDIT

As requested in your letter dated May 17, 2004, we examined Teledyne Brown Engineering's (TBE) April 20, 2004 termination for convenience settlement proposal in the amount of $394,109. Contract No. DAAH01-00-C-0077, Subcontract No. SDC006 was terminated for convenience on February 17, 2004. The termination settlement proposal was submitted on the inventory basis. The subcontract, in the amount of $403,298, was for providing the material to fabricate, assemble, and deliver 129 HAWK Circuit Cards and associated receiving, inspection and kitting. The purpose of the examination is to determine if the proposed subcontract costs are acceptable as a basis for negotiation.

The termination settlement proposal and related cost or pricing data are the responsibility of the subcontractor. Our responsibility is to express an opinion on the termination settlement proposal based on our examination.

## SCOPE OF AUDIT

Except for the qualification discussed below, we conducted our examination in accordance with generally accepted government auditing standards. Those standards require that we plan and perform the examination to obtain reasonable assurance that the termination settlement proposal is free of material misstatement. An examination includes:

- evaluating the subcontractor's internal controls, assessing control risk, and determining the extent of audit testing needed based on the control risk assessment;
- examining, on a test basis, evidence supporting the amounts and disclosures in the termination settlement proposal;
- assessing the accounting principles used and significant estimates made by the subcontractor;
- evaluating the overall termination settlement proposal presentation; and
- determining the need for technical specialist assistance and quantifying the results of a Government technical evaluation.

We evaluated the proposed cost using the applicable requirements contained in the:

- Federal Acquisition Regulation (FAR), including Part 49, Termination of Contracts,
- DoD FAR Supplement (DFARS),
- Cost Accounting Standards (CAS) and
- Subcontract Terms

We consider TBE's accounting and estimating systems adequate for preparation of the termination settlement proposal (please refer to Subcontractor Organization and Systems section). The scope of our examination reflects our assessment of control risk and includes audit tests designed to provide a reasonable basis for our opinion.

QUALIFICATION

On June 15, 2004, we requested a Technical Evaluation Report and a copy of the Inventory Verification Report from the Termination Contracting Office (TCO). We were informed that neither report would be available to us prior to the issuance of our audit report. Therefore, our report is qualified because we are unable to confirm that the proposed kinds, quantities and condition of purchased parts are representative of those required by the contract and in the possession of the subcontractor.

## RESULTS OF AUDIT

Except as qualified above, in our opinion, the offeror has submitted adequate cost or pricing data. The proposal was prepared in accordance with applicable Cost Accounting Standards and appropriate provisions of FAR, including Part 49, Termination of Contracts and the DoD FAR Supplement. Nevertheless, in our opinion, the technical evaluation and inventory verification reports discussed in the Qualification section of the report are significant enough to materially impact the results of audit. Therefore, we recommend that termination settlement negotiations not be concluded until results of the technical evaluation and inventory verification reports are considered by the termination contracting officer.

We discussed the factual matters concerning our findings with Ms. Debbie McGriff, Controller, throughout the course of the audit and at our exit conference on July 1, 2004. We did not provide the dollar impact of our findings. The subcontractor concurred with the audit findings disclosed. The results of our audit findings are provided in the following table and explanatory notes:

| | Proposed | Questioned | Difference (Note 1) | Ref |
|---|---|---|---|---|
| Purchased Parts | $321,497 | $ - | $ 321,497 | 2 |
| Work-in-Process (labor costs) | 7,759 | - | 7,759 | |
| Other Costs | 1,776 | 1,750 | 26 | 3 |
| General and Administrative Expenses | 37,294 | 302 | 36,992 | 4 |
| Subtotal: | $ 368,326 | $ 2,052 | $ 366,274 | |
| Profit | 25,783 | 144 | 25,639 | 5 |
| Settlement Expenses | - | - | - | |
| Total | $ 394,109 | $ 2,196 | $ 391,913 | |
| Settlements With Subcontractors | - | - | - | |
| Acceptable Finished Product | - | - | - | |
| Gross Settlement | $ 394,109 | $ 2,196 | $ 391,913 | |
| Disposal and Other Credits | - | - | - | |
| Net Proposed Settlement | $ 394,109 | $ 2,196 | $ 391,913 | |
| Advance, Progress & Partial Payments | - | - | - | |
| Net Payment Requested | $ 394,109 | $ 2,196 | $ 391,913 | |

**Explanatory Notes:**

2. Difference

The amounts in this column are presented solely for the convenience of the termination contracting officer in developing its negotiation objective. They represent only the arithmetic difference between amounts proposed and related questioned cost. You should not consider the amounts to be audit approved or recommended amounts. DCAA does not approve or recommend prospective costs because the amounts depend partly on factors outside the realm of accounting expertise, such as opinions on technical and production matters.

3. Purchased Parts

a. Summary of Conclusions:

We took no exception to the proposed cost of purchased parts.

d. Basis of Subcontractor's Cost:

The subcontractor proposed the actual cost of purchased parts, supported by purchase orders and invoices as recorded for account C0800 in its job cost records. The subcontractor disclosed that it delivered $357 worth of purchased parts to the prime contractor, Systems Development Corporation (SDC), for which TBE has not been paid.

e. Audit Evaluation:

We judgmentally selected material items proposed as purchased parts for verification to supporting documentation and found no exceptions. Therefore, we take no exception to the amount proposed by TBE for purchased parts.

d. Subcontractor's Reaction:

The subcontractor concurred with our findings.

3. Other Costs

a. Summary of Conclusions:

We questioned $1,750 of the $1,776 of proposed Other Costs.

c. Basis of Subcontractor's Cost:

The subcontractor proposed $23 of Overtime (ODC) premium cost; $3 of direct print shop cost and $1,750 of Period Cost (W/O) as Other Costs as recorded for C0800 in its job cost.

c. Audit Evaluation:

We questioned the $1,750 Period Cost, which is not a true cost incurred, but rather a memo entry in TBE's reserve accounts to adjust the work-in-process inventory value. This amount represents an end-of-year inventory valuation adjustment used for internal inventory valuation only. We therefore questioned the cost in its entirety.

d. Subcontractor's Reaction:

The contractor's representative, Ms. Debbie McGriff, Controller, concurred with our findings during an exit conference held July 1, 2004.

4. <u>General and Administrative Expenses</u>

a. Summary of Conclusions:

We questioned $302 of indirect expense amount as the result of two items: (1) calculation of the G&A costs associated with the questioned ODC for FY 2000 and (2) updating the 2002 "estimated rates" for the final negotiated rates.

b. Basis of Subcontractor's Cost:

The subcontractor's proposed G&A expense includes not only G&A expense, but also the cost of direct labor overhead and material handling overhead and G&A expense. The subcontractor estimated its FY 2002 indirect expense rates.

c. Audit Evaluation:

Subsequent to submitting its proposal, actual final rates for FY 2002 were negotiated with TBE. Our questioned cost results from the difference between proposed indirect rates and the application of the final rates to proposed labor and audit adjusted other costs as shown below:

| | |
|---|---|
| Questioned ODC cost of $1,750 multiplied by FY 2000 rate of 16.92% = | $ 296 |
| Pool 304 Direct Labor of $2,552 multiplied by questioned FY 2002 rate of .23% = | 6 |
| Total questioned | $ 302 |

d. Subcontractor's Reaction:

The subcontractor's representative Ms. Debbie McGriff, Controller, concurred with our findings during our July 1, 2004 exit conference.

5. Comments on Profit

a. Summary of Conclusions:

The subcontractor completed its performance of the subcontract, with the exception of shipping the parts to the prime contractor, at a cost less than the negotiated subcontract amount and, therefore, would have realized a profit had the subcontract gone to completion.

b. Basis of Subcontractor's Cost:

The contractor bases all of its cost, except for a minor amount of FY 2002 indirect expense, on actual cost incurred, which we reconciled to TBE books and records.

c. Audit Evaluation:

As discussed in Notes 3 and 4 above, we questioned minor amounts of Other Cost and Overhead and G&A expense. The original subcontract did not provide insight into the amount of profit that was negotiated into it. The subcontractor asserted that its performance was complete with the exception of shipping the completed units to the prime contractor. The following comparison suggests that the subcontractor would have been in a profit position had the subcontract not been terminated.

| | |
|---|---|
| Total Subcontract Price: P.O. No. SDC006 Rev.2 | $403,298 |
| Estimate of Cost at Completion of Subcontract | $366,274 |

Since FAR 49.202 provides the contracting officer the authority to negotiate profit, we are providing the following calculation to be considered by the TCO in reaching its determination, which reflects application of the proposed profit factor to the questioned costs:

Questioned costs $2,052 x 7 percent profit rate = $144

d. Subcontractor's Reaction:

The contractor's representative Ms. Debbie McGriff, Controller, concurred with our findings during our exit conference held on July 1, 2004.



FOR OFFICIAL USE ONLY

## SUBCONTRACTOR ORGANIZATION AND SYSTEMS

### I. Organization

Teledyne Brown Engineering is a segment of Teledyne Technologies, Incorporated. Teledyne Technologies was formed in November 1999 as a spin-off from Allegheny Teledyne, and is traded on the New York Stock Exchange under the symbol TDY. Corporate headquarters is in Los Angeles, California.

The organization headquartered in Huntsville, Alabama consists of three business units. The Systems Group is responsible for the space (NASA) and environmental systems areas. Its primary focus is on analysis, hardware design and development, systems engineering and integration, mission operations and systems support. The Technologies Group provides technology based support to defense and other agencies, as well as system prime contractors, including distributed testing and simulation and modeling. Its primary focus is on missile defense, space control, recapitalization and obsolescence mitigation, test and evaluation, homeland defense, and servicing established customers at Redstone Arsenal. Teledyne Solutions, Inc. is a wholly owned subsidiary of Teledyne Brown Engineering that provides large systems engineering and technology through a contract with U. S. Army Space and Missile Command. TSI has responsibility for the Systems Engineering and Technical Assistance Contract, known by the acronym SETAC, initially awarded to TSI in 1971 and last awarded to TSI in 2002.

As of February 2004, there were approximately 1,619 persons employed in support of governmental program activity. Employees are located primarily in subcontractor facilities in Cummings Research Park (Huntsville, Alabama) and customer facilities at Boeing and Redstone Arsenal. Additional locations include: Colorado Springs, Colorado; Knoxville, Tennessee; Johnson Space Flight Center at Houston, Texas; Los Angeles, California; and Arlington, Virginia.

The company government division sales are shown below.

| Year | Sales ($000) |
|---|---|
| 1999 | 191,686 |
| 2000 | 212,329 |
| 2001 | 200,887 |
| 2002 | 206,627 |
| 2003 | 212,761 |

## II. Systems

a. Accounting System:

TBE's accounting system consists of general books of account and supporting subsidiary ledgers and journals maintained on an accrual basis. Beginning in January 1999, TBE implemented Costpoint, an accounting and project management software system. It is a client/server system designed for project oriented businesses with a strong emphasis on Government reporting. All modules installed by TBE are fully integrated. The modules used by TBE include projects, general ledger, accounts receivable, accounts payable, procurement planning, inventory, purchasing, receiving, fixed assets, and billing. The contractor's fiscal year ends the last Sunday in December.

In our opinion, the subcontractor's accounting system and related internal control policies and procedures are adequate for the accumulation and reporting of costs under government contracts and subcontracts as reported in Audit Report No. 1201-2002J11070001, dated December 23, 2002.

The subcontractor maintains a job order cost accounting system with work authorizations being used for control and accumulation of direct costs. Indirect expenses are accumulated and distributed by utilizing cost center control techniques. The subcontractor's current overhead pool structure and basis of indirect cost allocation are as follows:

| **Burden Center** | **Basis of Allocation** |
|---|---|
| SETA Operations, Pool 306 | Direct labor costs exclusive of overtime premium |
| Huntsville Manufacturing, Pool 302 | " " " " |
| Engineering Services, Pool 304 | " " " " |
| Extended Merit Pool 309 | " " " " |
| Offsite Engineering Services, Pool 312 | " " " " |
| Engineering Development, Offsite, Pool 321 | " " " " |
| PP&C Operations, Pool 322 | " " " " |
| PMIC Operations Pool 324 | " " " " |
| Material Handling | Total material, equipment lease, and external computer costs |
| Services Handling | Total services and consultant costs |
| G&A | Total plant cost exclusive of direct material and services cost input. |

On April 27, 2000 Teledyne Brown Engineering, Inc. formed an independent, wholly owned subsidiary known as Teledyne Solutions, Inc. (TSI). TSI provides support through a contract with U. S. Army Space and Missile Command. TSI has responsibility for the Systems Engineering and Technical Assistance Contract, known by the acronym SETAC. This

subsidiary is included in the base for TBE's G&A, material handling and services handling pools and accumulates the following separate overhead pools:

| **Burden Center** | **Basis of Allocation** |
|---|---|
| TSI SETA Operations, Pool 386 | Direct labor costs exclusive of overtime premium |
| TSI SETA Operations Offsite, Pool 382 | " " " " |
| TSI Offsite Engineering Development, Pool 381 | " " " " |

b. Estimating System:

In our opinion, TBE's estimating system and the related internal control policies and procedures are adequate to ensure that proposals and final certified contract prices are based on accurate, complete, and current cost or pricing data as noted in Audit Report No. 1201-2004J24010001, dated February 19, 2004. Accordingly, we have assessed control risk as low.

Teledyne Brown Engineering's estimating system includes the involvement and input of numerous departments (Contracts, Legal, Pricing, Financial Analysis, Strategic Business Units (SBU), Procurement/Purchasing, etc.). The SBUs (Proposal Managers and Engineering Estimators) are responsible for preparing cost estimates used in individual price proposals including pricing notes, direct labor hours, material quantities, subcontract effort, and other direct costs (travel, technical publications, etc.). The material requirements are priced primarily by the Procurement/Purchasing department and service subcontracts are priced through the Subcontract Administration department. The Pricing Department must ensure that all proposals are priced in accordance with the latest available data. Checks and balances will be performed and verified to ensure that all data provided to them have been included in the cost. It is the responsibility of Pricing to ensure that all proposals are priced and then audited by Financial Analysis. In addition, Pricing is responsible for maintaining the original of the approved, final input in a proposal file for all proposals. Financial Analysis verifies that the cost estimated is current, accurate and complete (i.e. the estimated direct labor cost is computed using current average labor rates by category by division/overhead pool). The Financial Analysis department compiles indirect rates and verifies that the application of labor overhead and G&A is based on the Forward Pricing models for the period proposed.

## DCAA PERSONNEL

| | Telephone No. |
|---|---|
| Primary contacts regarding this audit report: | |
| Robert McCracken, Senior Auditor | |
| William W. Hitt, Supervisory Auditor | (256) 842-7700, ext. 124 |
| Other contact regarding this audit report: | |
| Betty J. King, Branch Manager | (256) 842-7700, ext. 120 |

FAX No.
(256) 842-9184

E-mail Address
dcaa-fao1201@dcaa.mil

General information on audit matters is available at http://www.dcaa.mil.

## RELEVANT DATES

Request For Audit: TCO – dated May 26, 2004
Due Date Extended: TCO – July 14, 2004

**AUDIT REPORT AUTHORIZED BY:**

Betty J. King
Betty J. King
Branch Manager
DCAA Huntsville Branch Office

**AUDIT REPORT DISTRIBUTION AND RESTRICTIONS**

DISTRIBUTION

| | E-mail Address |
|---|---|
| Termination Contracting Officer<br>ATTN: DCMAE-GATC/ Mr. Paul E. Slemons<br>Defense Contract Management Command Atlanta<br>2300 Lake Park Drive, Suite 300<br>Smyrna, Georgia 30080-4091 | paul.slemons@dcma.mil<br><br><u>Telephone No.</u><br>(678) 503-6351 |

Teledyne Brown Engineering, Inc (Copy furnished thru ACO)
300 Sparkman Drive
Huntsville, Alabama 35805

RESTRICTIONS

5. Information contained in this audit report may be proprietary. It is not practical to identify during the conduct of the audit those elements of the data which are proprietary. Make proprietary determinations in the event of an external request for access. Consider the restrictions of 18 U.S.C. 1905 before releasing this information to the public.

6. Under the provisions of Title 32, Code of Federal Regulations, Part 290.7(b), DCAA will refer any Freedom of Information Act requests for audit reports received to the cognizant contracting agency for determination as to releasability and a direct response to the requestor.

7. The Defense Contract Audit Agency has no objection to release of this report, at the discretion of the contracting agency, to the authorized representatives of Teledyne Brown Engineering, Inc. (TBE) However, please note that since TBE objects to the release of certain parts of this report including all detailed base labor rate and indirect rate information to Systems Development Corporation. If these parts of the report cannot be separately segregated and removed, then the report cannot be released to SDC. See the Appendix for a copy of the subcontractor's statement of objection to release of any part of the report.

8. Do not use the information contained in this audit report for purposes other than action on the subject of this audit without first discussing its applicability with the auditor.

## SUBCONTRACTOR'S RELEASE LETTER

TELEDYNE
BROWN ENGINEERING, INC.
A Teledyne Technologies Company
Cummings Research Park
300 Sparkman Drive, NW
P.O. Box 070007
Huntsville, Alabama 35807-7007
256.726.1000

June 17, 2004

HAC-0332-04
Mail Stop # 25

Mr. Robert McCracken
Defense Contract Audit Agency
M/S 4 PO Box 070007
Huntsville AL 35807-7007

Subject: Hawk Spares Termination Proposal, Proposal Log No. 2002-294

Dear Mr. McCracken:

Teledyne Brown Engineering (TBE) hereby provides DCAA authorization to release to the cognizant US Government contracting officer results of the audit of the subject proposal for termination of the Hawk Spares program, under which TBE performed as a subcontractor to SDC, Incorporated. If SDC, Incorporated has also requested a copy of the audit report, TBE authorizes release of a "sanitized" version of the report which excludes TBE proprietary cost data [protected proprietary data includes, but is not limited to, all direct rates/costs (e.g., labor, material, and ODCs), overhead rates/costs, material and services handling rates/costs, and G&A rates/costs]. Data may be presented to SDC only at the fully burdened level. The profit amount is not considered proprietary.

If you have any questions, please contact me at (256) 726-1644 or via FAX at (256) 726-3187.

Sincerely,

TELEDYNE BROWN ENGINEERING, INC.

Harry A. Chaffee
Director, Contract Administration

Cc: D. McGriff

**DEFENSE CONTRACT MANAGEMENT AGENCY**
DEFENSE CONTRACT MANAGEMENT AGENCY ATLANTA
ATTN: DCMAE-GATC
2300 Lake Park Drive, Suite 300
Smyrna, GA 30080-4091
Tel: (678) 503-6351
Fax: (678) 503-6034
E-mail: Paul.Slemons@dcma.mil

IN REPLY REFER TO

DCMAE-GATC

August 4, 2004

SUBJECT: Requested Information, Contract DAAH01-00-C-0077
Docket A049531EA

SYSTEMS DEVELOPMENT CORP.
ATTN: GILLIAM CARPENTER (256-382-4600)
225 SPRAGINS STREET, SUITE G
HUNTSVILLE, AL 35801
gcarpenter@sdchsv.com

Dear MR. CARPENTER:

Enclosed is DCAA Audit Report 01201-2004J17100001 dated July 15, 2004 for your review. Since the DCAA questioned costs are in excess of $100,000 ($413,453.00), I am requesting your written response to the DCAA findings in accordance with DoD Directive 7640.2, "Policy for Followup on Contract Audit Reports". The response should address each item of questioned cost, state whether you agree or disagree with the finding and the basis for their position. Where you feel the justification contained in the proposal adequately explains your position, simply reference that fact; there is no need to duplicate the support. I have also attached an offer made in attempt to settle of $115,530.

Should you have any further questions, I may be reached at (678) 503-6351, FAX (678) 503-6034, or Paul.Slemons@dcma.mil.

Sincerely,

PAUL E. SLEMONS
Termination Contracting Officer

Attachment