# TAB 33

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SYSTEMS DEVELOPMENT CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant

No. 06-232C (Judge Baskir)

DEFENDANT'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT

For its answer to the amended complaint, defendant admits, denies, and alleges as follows:

JURISDICTION

The allegation contained in the first sentence of the section labeled Jurisdiction ("opening section") is a conclusion of law to which no response is required; to the extent it may be deemed an allegation of fact, it is denied. Defendant, the United States, admits the allegations in the second, third, and fourth sentences of the opening section. Defendant admits the allegations in the fifth sentence of the opening section to the extent they are supported by the termination settlement proposal cited, which is the best evidence of its contents; otherwise denies the allegations contained in the fifth sentence of the opening section. Defendant admits the allegation in the sixth sentence of the opening section to the extent it is

supported by the contracting officer's decision which is the best evidence of its contents; otherwise denies the allegations contained in the sixth sentence of the opening section.

1. Defendant admits the allegations in the first and second sentences of paragraph 1 of the amended complaint to the extent they are supported by the contract referred to which is the best evidence of its contents; otherwise denies the allegations contained in the first and second sentences of paragraph 1. Defendant denies the remainder of the allegations in paragraph 1 of the amended complaint and specifically avers that the TDP did not contain deficiencies.

m 2. Defendant admits the allegations in the first sentence of paragraph 2 of the amended complaint to the extent they are supported by the contract referred to which is the best evidence of its contents; otherwise denies the allegations contained in the first sentence of paragraph 2. Defendant admits that it did not terminate the contract; otherwise denies the allegations in the second sentence of paragraph 2. Defendant admits the allegations in the third sentence of paragraph 2 to the extent they are supported by the contract referred to which is the best evidence of its

contents; otherwise denies the allegations contained in the third sentence of paragraph 2. The final sentence of paragraph 2 constitutes plaintiff's characterization of this case to which no response is required; to the extent it may be deemed an allegation of fact it is denied.

3. The allegation contained in paragraph 3 of the amended complaint constitutes plaintiff's conclusion of law and characterization of this case to which no response is necessary; to the extent it may be deemed an issue of fact it is denied.

4. The allegations contained in the first, second, and third sentences of paragraph 4 constitute plaintiff's conclusions of law to which no response is necessary; to the extent they may be deemed an issue of fact they are denied. Defendant denies the allegations in the fourth sentence of paragraph 4.

5a-5d. The allegations contained in paragraphs 5a through 5d constitute plaintiff's conclusion of law and plaintiff's characterization of its case; to the extent they may be deemed an allegation of fact they are denied.

5.e. Defendant admits the allegations in the first sentence of paragraph 5e to the extent they are supported by the specifications and

drawings referred to; otherwise they are denied. The allegation in the second sentence of paragraph 5e constitutes plaintiff's conclusion of law to which no response is necessary; to the extent it is deemed an allegation of fact it is denied.

6. Defendant denies the allegations in paragraph 6 of the amended complaint. Defendant specifically avers that it provided all information necessary for a competent contractor to complete performance under this supply contract.

7. Defendant denies the allegations in paragraph 7 of the amended complaint. Defendant specifically avers that it provided all information necessary for a competent contractor to complete performance under this supply contract.

8. Defendant denies the allegations in paragraph 8 of the amended complaint. Defendant specifically avers that it provided all information necessary for a competent contractor to complete performance under this supply contract.

9. Defendant denies the allegations in paragraph 9 of the amended complaint. Defendant specifically avers that it provided all information necessary for a competent contractor to complete performance

under this supply contract.

10. Defendant admits the allegations contained in paragraph 10 to the extent they are supported by the letter referred to which is the best evidence of its contents; otherwise denies the allegations in paragraph 10.

11. Defendant admits the allegations contained in paragraph 11 to the extent they are supported by the letter referred to which is the best evidence of its contents; otherwise denies the allegations in paragraph 11.

12. Defendant lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of the amended complaint.

13. Defendant admits the allegations contained in paragraph 13 to the extent they are supported by the letter referred to which is the best evidence of its contents; otherwise denies the allegations in paragraph 13.

14. The allegations contained in paragraph 14 constitute plaintiff's characterization of this case; to the extent they may be deemed allegations of fact they are denied.

15. Defendant admits the allegations contained in paragraph 15 of the amended complaint but, specifically denies that the technical data package was defective.

16. Defendant admits the allegations contained in paragraph 16 to the extent they are supported by the letter referred to which is the best evidence of its contents; otherwise denies the allegations in paragraph 16 of the amended complaint.

17. Defendant admits that SDC continued to request clarification of the technical data package requirements; otherwise denies the allegations in the first sentence of paragraph 17 of the amended complaint. Defendant admits that plaintiff communicated with the new contracting officer, otherwise denies the allegations in the second sentence of paragraph 17 of the amended complaint. Defendant denies the allegation in the third sentence of paragraph 17 of the amended complaint.

18. Defendant admits the allegations contained in the first, second and third sentences of paragraph 18 to the extent they are supported by the letter referred to which is the best evidence of its contents; otherwise denies the allegations in the first sentence of paragraph 18. Defendant specifically denies that it failed to provide any required data. Defendant admits that it denied the request for progress payments; otherwise denies the allegations in the fourth sentence of paragraph 18 of the amended complaint.

19. Defendant admits the allegations contained in paragraph 19 of the amended complaint but specifically denies that the technical data package was defective.

20. Defendant admits the allegations contained in paragraph 20 to the extent they are supported by the letter referred to which is the best evidence of its contents; otherwise denies the allegations in paragraph 20.

21. Defendant admits the allegations contained in paragraph 21 to the extent they are supported by the letter referred to which is the best evidence of its contents; otherwise denies the allegations in paragraph 21.

22. Defendant admits the allegations contained in paragraph 22 to the extent they are supported by the letter referred to which is the best evidence of its contents; otherwise denies the allegations in paragraph 22.

23. Defendant admits the allegation contained in paragraph 23, but specifically denies that the technical data package was defective.

24. Defendant denies the allegations contained in the first sentence of paragraph 24. Defendant admits the allegation in the second sentence of paragraph 24. Defendant admits the allegations in the third sentence of paragraph 24 of the amended complaint to the extent they are supported by the termination settlement proposal referred to which is the best

evidence of its contents; otherwise denies the allegations in the third sentence of paragraph 24. Defendant specifically denies that there were defects in the technical data package.

COUNT I

25. Defendant re-alleges and incorporates herein by reference its responses to Paragraphs 1-24 of the amended complaint.

26. Defendant denies that plaintiff is entitled to the relief requested in paragraph 26 or any relief whatsoever.

COUNT II

27. Defendant re-alleges and incorporates herein by reference its responses to Paragraphs 1-26 of the amended complaint.

28. Defendant admits the allegations in paragraph 28 of the amended complaint to the extent they are supported by the contracting officer's decision referred to which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 28.

29. Defendant admits the allegations in the first and second sentences of paragraph 29 to the extent they are supported by the contracting officer's final decision referred to which is the best evidence of its contents; otherwise denies the allegations in the first and second

sentence of paragraph 29. The third and fourth sentences of paragraph 29 constitute plaintiff's characterization of its case and its legal conclusions to which no response is required; to extent they may be deemed statements of fact they are denied.

30. Defendant realleges and incorporates by reference its responses to Paragraphs 1-30 of the amended complaint.

31. Defendant denies that plaintiff is entitled to the relief requested in paragraph 31 or any relief whatsoever.

COUNT III

32. Defendant re-alleges and incorporates herein by reference its responses to Paragraphs 1-31 of the amended complaint.

33. The allegations contained in paragraph 33 constitute plaintiff's conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

34. The allegations contained in paragraph 34 constitute plaintiff's conclusions of law and characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

35. Defendant denies that plaintiff is entitled to the relief requested

in paragraph 35 or any relief whatsoever.

COUNT IV

36. Defendant re-alleges and incorporates herein by reference its responses to Paragraphs 1-36 of the amended complaint.

37. Defendant denies that plaintiff is entitled to the relief requested in paragraph 37 or any relief whatsoever.

COUNT V

38. Defendant re-alleges and incorporates herein by reference its responses to Paragraphs 1-37 of the amended complaint.

39. The allegations contained in paragraph 39 constitute plaintiff's conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

40. Defendant admits the allegations in paragraph 40 of the amended complaint to the extent they are supported by the document referred to which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 40.

41. Defendant denies the allegations in paragraph 41 of the amended complaint.

42. Defendant admits the allegations in paragraph 42 of the

amended complaint to the extent they are supported by the document referred to which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 42.

43. Defendant admits the allegations in paragraph 43 of the amended complaint to the extent they are supported by the document referred to which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 43.

44. Defendant denies the allegations in paragraph 44 of the amended complaint.

45. Defendant admits the allegation in paragraph 45 of the amended complaint, but denies that any redesign of the HAWK Missile System was required, necessary, or prudent by the terms of this supply contract.

46. The allegations contained in paragraph 46 constitute plaintiff's conclusions of law and characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

47. The allegations contained in paragraph 47 constitute plaintiff's conclusions of law and characterization of its case to which no response is

required; to the extent they may be deemed allegations of fact, they are denied.

48. Denies that plaintiff is entitled to the relief requested in paragraph 48 or to any relief whatsoever.

49. Defendant denies each and every allegation not previously admitted or otherwise qualified.

WHEREFORE, defendant respectfully requests that the Court dismiss the amended complaint, and that defendant be granted such other and further relief as the Court may deem just and proper.

AFFIRMATIVE DEFENSES

50. Plaintiff's claims are barred by the doctrine of payment insofar as plaintiff has received payment and has been fully compensated according to the terms and conditions of the contract.

51. Plaintiff's claims are barred by the doctrine of accord and satisfaction insofar as the verifiable expenses submitted for payment have been paid in full.

52. Plaintiff's amended complaint fails to state a claim upon which relief can be granted.

53. Plaintiff's equitable adjustment claims are barred because

plaintiff failed to present them in a certified claim to the Procuring Contracting Officer.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

OF COUNSEL:
STEPHEN F. PEREIRA
Defense Contract
Management Agency

s/ Joan M. Stentiford
JOAN M. STENTIFORD

Trial Attorney
Commercial
Litigation Branch
Civil Division
Department of Justice
Phone: (202) 616-0341
Fax: (202) 514-8624

July 12, 2007

Attorneys for Defendant

# TAB 34

couple things.
Q. And they would have been related to -- they would have been some kind of computer parts?
A. Right. One was a part for a helicopter I remember that we manufactured, but the name of the part just escapes me right now.
Q. It wouldn't mean anything to me. I was just wondering if you had a general sense.
A. I know it was a small part for a helicopter.
Q. Was it the same kind of -- was it a board with chips on it?
A. It was not a circuit card. I think it was some other kind of part.
Q. Okay. Now, you have heard -- because you were present for all the depositions, you heard the witnesses talk about this contract we have been calling 0077.
A. Yes.
Q. When I refer to 0077, do you understand the contract to which I'm referring?
A. Absolutely.
Q. How did you come to bid on that contract?
A. It was a sole source as an 8A contract that was

offered to us by the Aviation and Missile Command.
Q. And the Aviation Missile Command, is that AMCOM that you said you worked for before?
A. As a contractor, yes.
Q. I'm sorry. You contracted with them before?
A. Right.
Q. Is that who you made the helicopter part for?
A. Yes.
Q. And were you at that point affiliated with Teledyne Brown?
A. Yes.
(Exhibit No. 28 marked for identification.)
BY MS. STENTIFORD:
Q. This is a thirteen page document with two attachments. So, take a minute and look it over. And when you're ready, if you could identify the document for me.
A. This is a part of the teaming agreement that we signed with Teledyne Brown in partnership with another manufacturing firm called Campbell Engineering.
Q. What was the purpose of this agreement?
A. The purpose of this agreement was to further define

# TAB 35

that review?
A. Level III documentation is adequate for filling open competition in theory. With the admin of this meeting, we went over to the TDP building and pulled the TDP and looked at it, and the TDP, Technical Data Package, was complete except when you got to the logic tables at the rear end of it, they weren't complete.
And we tried after that to get them complete, and I did call Raytheon and asked Raytheon to produce them, and Raytheon did produce them, the TDP for that card. Was it early enough to help her? No, not really. It was after the fact. But we got the TDP brought up to snuff at that time.
Q. But at the time the contract was awarded to SDC the Technical Data Package was inadequate with respect to the PROM data?
A. The TDP was complete, but inadequate in the rear part of it, yes, where the logic data was. It looked like scrambled eggs. You couldn't read it.
Q. Did Raytheon subsequently provide this PROM data to the United States?
A. Yes.

as Exhibit Number 25. The first page appears to be a series of e-mails, and there's an e-mail in the middle called original message right here which appears to be from you to Jerry Hill dated September 4th, 2003 at 3:56 p.m. Do you see that e-mail?
A. (Witness nods head.)
Q. Is that an e-mail that you sent to Mr. Hill?
A. Yes.
Q. Okay. And did you write -- did you personally write the material that is contained in the e-mail?
A. Yes, I did.
Q. Okay. So, as of September 4th, 2003, you report to Mr. Hill with respect to contract 0077, "Raytheon has said they will not help with the DAAD card, or provide a better mylar drawing, or Gerber files. We paid them for Level III documentation, and they provided something much less."
So, you indicate to Mr. Hill that you did -- that even though the government may have purchased Level III documentation, they provided you something that was not, in fact, Level III documentation.
A. Their definition of Level III was a lot less than the government's definition.

# TAB 36

SDC

29 April 2003

Commander
U.S. Army Aviation and Missile Command
AMSAM-AC-LS-M
Redstone Arsenal, AL 35898

Attention: Mr. Jerry Hill

Subject: Settlement Proposal for Contract DAAH01-00-C-0077

Dear Mr. Hill:

Reference SDC letter of 19 November 2002, which remains unanswered. SDC considers this contract constructively terminated for convenience as of 30 April 2003. SDC has also certified this claim under the Contracts Disputes Act and requests a Contracting Officer's Final Decision.

SDC, Inc. hereby submits the attached Settlement Proposal for contract DAAH01-00-C-0077. The following certification is submitted as required by FAR 33.207:

" I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor".

Signature: V. P. Gilchrist
Name: Virginia P. Gilchrist
Title: President
Date: 29 April 2003

If you need additional information please contact me at (256) 382-4600.

Sincerely,

V. P. Gilchrist

Virginia P. Gilchrist
President

Attachments (3)
A – Settlement Proposal, SF 1436
B – Cost Summary Data
C – Contract Documentation Timeline

SDC 1233

351

# SETTLEMENT PROPOSAL (TOTAL COST BASIS)

OMB No. 9000-0012
Expires: 05/31/98

...reporting burden for this collection of information is estimated to average 2.5 hours per response, including the time for reviewing instructions, searching existing data ...s, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other ... of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, ... 20405.

## FOR USE BY A FIXED-PRICE PRIME CONTRACTOR OR FIXED-PRICE SUBCONTRACTOR

THIS PROPOSAL APPLIES TO *(Check one)*
[X] A PRIME CONTRACT WITH THE GOVERNMENT [ ] SUBCONTRACT OR PURCHASE ORDER

SUBCONTRACT OR PURCHASE ORDER NO(S).

COMPANY: Systems Development Corporation (SDC, Inc.)

STREET ADDRESS: 215 Wynn Drive, Suite 318

CITY AND STATE *(Include ZIP Code)*: Huntsville, AL 35805

### CONTRACTOR WHO SENT NOTICE OF TERMINATION

NAME: Systems Development Corporation (SDC, Inc.)

ADDRESS *(Include ZIP Code)*: 215 Wynn Drive, Suite 318, Huntsville, AL 35805

NAME OF GOVERNMENT AGENCY: US Army Aviation & Missile Command

GOVERNMENT PRIME CONTRACT NO.: DAAH01-00-C-0077

CONTRACTOR'S REFERENCE NO.: 4117

If moneys payable under the contract have been assigned, give the following:

NAME OF ASSIGNEE:

ADDRESS *(Include ZIP Code)*

EFFECTIVE DATE OF TERMINATION: 31 March 2003

PROPOSAL NO.: SDC 0001

CHECK ONE: [X] INTERIM [ ] FINAL

SF 1439, SCHEDULE OF ACCOUNTING INFORMATION [X] IS [ ] IS NOT ATTACHED *(If not, explain below)*

## SECTION I - STATUS OF CONTRACT OR ORDER AT EFFECTIVE DATE OF TERMINATION

| PRODUCTS COVERED BY TERMINATED CONTRACT OR PURCHASE ORDER (a) | | FINISHED: PREVIOUSLY SHIPPED AND INVOICED (b) | FINISHED ON HAND: PAYMENT TO BE RECEIVED THROUGH INVOICING (c) | FINISHED ON HAND: PAYMENT NOT TO BE RECEIVED THROUGH INVOICING (d) | UNFINISHED OR NOT COMMENCED: SUBSEQUENTLY COMPLETED AND INVOICED* (e) | UNFINISHED OR NOT COMMENCED: NOT TO BE COMPLETED (f) | TOTAL COVERED BY CONTRACT OR ORDER |
|---|---|---|---|---|---|---|---|
| it Card Assembly | QUANTITY | 0 | 0 | 0 | 0 | 24 | 24 |
| | $ | 0 | 0 | 0 | 0 | $430,000.00 | $430,000.00 |
| | QUANTITY | | | | | | |
| | $ | | | | | | |
| | QUANTITY | | | | | | |
| | $ | | | | | | |

## SECTION II - PROPOSED SETTLEMENT

| NO. | ITEM (a) | TOTAL PREVIOUSLY PROPOSED (b) | INCREASE OR DECREASE BY THIS PROPOSAL (c) | TOTAL PROPOSED TO DATE (d) | FOR USE OF CONTRACTING AGENCY ONLY (e) |
|---|---|---|---|---|---|
| | | (Use Columns (b) and (c) only where previous proposal has been filed) | | | |
| 1 | DIRECT MATERIAL | | | 346,987.00 | |
| 2 | DIRECT LABOR | | | 0 | |
| 3 | INDIRECT FACTORY EXPENSE *(from Schedule A)* | | | 0 | |
| 4 | SPECIAL TOOLING AND SPECIAL TEST EQUIPMENT *(SF 1432)* | | | 0 | |
| 5 | OTHER COSTS *(from Schedule B)* | | | 12,000.00 | |
| 6 | GENERAL AND ADMINISTRATIVE EXPENSES *(from Schedule C)* | | | 122,374 | |
| 7 | TOTAL COSTS *(Items 1 thru 6)* | | | 481,361.00 | |
| 8 | PROFIT *(Explain in Schedule D)* | | | 48,136.00 | |
| 9 | TOTAL *(Items 7 and 8)* | | | 529,497.00 | |
| 10 | DEDUCT FINISHED PRODUCT INVOICED OR TO BE INVOICED* | | | 0 | |
| 11 | TOTAL *(Item 9 less Item 10)* | | | 529,497.00 | |
| 12 | SETTLEMENT EXPENSES *(from Schedule E)* | | | 8,900.00 | |
| 13 | TOTAL *(Items 11 and 12)* | | | 538,397.00 | |
| 14 | SETTLEMENTS WITH SUBCONTRACTORS *(from Schedule F)* | | | 57,726.00 | |
| 15 | GROSS PROPOSED SETTLEMENT *(Items 13 thru 14)* | | | 596,123.00 | |
| 16 | DISPOSAL AND OTHER CREDITS *(from Schedule G)* | | | 0.00 | |
| 17 | NET PROPOSED SETTLEMENT *(Item 15 less 16)* | | | 596,123.00 | |
| 18 | ADVANCE, PROGRESS & PARTIAL PAYMENTS *(from Schedule H)* | | | 0.00 | |
| 19 | NET PAYMENT REQUESTED *(Item 17 less 18)* | | | 596,123.00 | |

SDC 1234

*Column (e), Section I, should only be used in the event of a partial termination, in which the total cost reported in Section II should be accumulated to date of completion of the continued portion of the contract and the deduction for finished product (Item 10, Section II) should be the contract price of finished product in Column (b), (c), and (e), Section I.

NOTE: File inventory schedules (SF 1426, 1428, 1430, and 1432) for allocable inventories on hand at date of termination ( See 49.206).

(When the space provided for any information is insufficient, continue on a separate sheet.)

352

SCHEDULE A - INDIRECT FACTORY EXPENSE *(Item 3)*

| DETAIL OF EXPENSES | METHOD OF ALLOCATION | AMOUNT | FOR USE OF CONTRACTING AGENCY ONLY |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

NOTE: Individual items of small amounts may be grouped into a single entry in Schedules B, C, D, E, and G.

SCHEDULE B - OTHER COSTS *(Item 5)*

| ITEM | EXPLANATION | AMOUNT | FOR USE OF CONTRACTING AGENCY ONLY |
|---|---|---|---|
| ODC | Procurement labor costs | 12,000.00 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

SCHEDULE C - GENERAL AND ADMINISTRATIVE EXPENSES *(Item 6)*

| DETAIL OF EXPENSES | METHOD OF ALLOCATION | AMOUNT | FOR USE OF CONTRACTING AGENCY ONLY |
|---|---|---|---|
| SDC, Inc. labor | Direct application of labor used to seek resolution | 102,700.00 | |
| Material Handling cost | @ current rate of 5.67 % | 19,674.00 | |
| | | | |
| | | | |
| | | | |
| | | | |

SCHEDULE D - PROFIT *(Item 8)*

| EXPLANATION | AMOUNT | FOR USE OF CONTRACTING AGENCY ONLY |
|---|---|---|
| A reasonable profit of 10% is applied to Direct, ODC, and G&A expenses | 48,136.00 | |
| | | |
| | | |

SDC 1235

(Where the space provided for any information is insufficient, continue on a separate sheet.)

353

SCHEDULE E - SETTLEMENT EXPENSES *(Item 12)*

| ITEM | EXPLANATION | AMOUNT | FOR USE OF CONTRACTING AGENCY ONLY |
|---|---|---|---|
| Administration | Labor, research, and other administrative costs | 8,900.00 | |

SCHEDULE F - SETTLEMENTS WITH IMMEDIATE SUBCONTRACTORS AND SUPPLIERS *(Item 14)*

| NAME AND ADDRESS OF SUBCONTRACTOR | BRIEF DESCRIPTION OF PRODUCT CANCELED | AMOUNT OF SETTLEMENT | FOR USE OF CONTRACTING AGENCY ONLY |
|---|---|---|---|
| Teledyne Brown Engineering | | | |
| 300 Sparkman Drive, Huntsville, AL 35805 | Labor | 18,873.00 | |
| | ODC | 2061.00 | |
| | Fee | 36,792.00 | |

SCHEDULE G - DISPOSAL AND OTHER CREDITS *(Item 16)*

| DESCRIPTION | AMOUNT | FOR USE OF CONTRACTING AGENCY ONLY |
|---|---|---|
| | | |

SDC 1236

(If practicable, show separately amount of disposal credits applicable to acceptable finished product included on SF 1428.)

(Where the space provided for any information is insufficient, continue on a separate sheet.)

SCHEDULE H - ADVANCE, PROGRESS AND PARTIAL PAYMENTS *(Item 19)*

| DATE | TYPE OF PAYMENT | AMOUNT | FOR USE OF CONTRACTING AGENCY ONLY |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

(Where the space provided for any information is insufficient, continue on a separate sheet.)

CERTIFICATE

**SDC 1237**

This is to certify that the undersigned, individually, and as an authorized representative of the Contractor, has examined this termination settlement proposal and that, to the best knowledge and belief of the undersigned:

(a) AS TO THE CONTRACTOR'S OWN CHARGES. The proposed settlement (exclusive of charges set forth in Item 14) and supporting schedules and explanations have been prepared from the books of account and records of the Contractor in accordance with recognized commercial accounting practices; they include only those charges allocable to the terminated portion of this contract; they have been prepared with knowledge that they will, or may, be used directly or indirectly as the basis of settlement of a termination settlement proposal or claim against an agency of the United States; and the charges as stated are fair and reasonable.

(b) AS TO THE SUBCONTRACTORS' CHARGES. (1) The Contractor has examined, or caused to be examined, to an extent it considered adequate in the circumstances, the termination settlement proposals of its immediate subcontractors (exclusive of proposals filed against these immediate subcontractors by their subcontractors); (2) The settlements on account of immediate subcontractors own charges are fair and reasonable, the charges are allocable to the terminated portion of this contract, and the settlements were negotiated in good faith and are not more favorable to its immediate subcontractors than those that the Contractor would make if reimbursement by the Government were not involved; (3) The Contractor has received from all its immediate subcontractors appropriate certificates with respect to their termination settlement proposals, which certificates are substantially in the form of this certificate; and (4) The Contractor has no information leading it to doubt (i) the reasonableness of the settlements with more remote subcontractors or (ii) that the charges for them are allocable to this contract. Upon receipt by the Contractor of amounts covering settlements with its immediate subcontractors, the Contractor will pay or credit them promptly with the amounts so received, to the extent that it has not previously done so. The term "subcontractors," as used above, includes suppliers.

NOTE: The Contractor shall, under conditions stated in FAR 15.403, be required to submit a Certificate of Current Cost or Pricing Data (see FAR 15.406-2 and 15.408 Table 15-2).

| ME OF CONTRACTOR | BY *(Signature of authorized official)* | |
|---|---|---|
| SDC, Inc. | V. P. Gilchrist | |
| | TITLE President | DATE 4/29/03 |
| NAME OF SUPERVISORY ACCOUNTING OFFICIAL | TITLE | |

SDC, Inc.

Attachment B

Settlement Cost Summary Data

HAWK DAAH01-00-C-0077
NSN: 5998-01-319-4313

| Direct Material | |
|---|---|
| Total Cost | $346,987.00 |

| Other Costs (Sch B) | Hours | Cost |
|---|---|---|
| $ 19.00 | 500 | $ 9,500.00 |
| $ 10.00 | 147 | $ 1,470.00 |
| $ 5.15 | 200 | $ 1,030.00 |
| Schedule B Total | | $ 12,000.00 |

| G & A (Sch C) Labor Rate | Hrs/Wk | Weeks | Cost |
|---|---|---|---|
| $ 55.00 | 10 | 104 | $ 57,200.00 |
| $ 25.00 | 14 | 130 | $ 45,500.00 |
| | | Total Labor | $ 102,700.00 |

| G & A (Sch C) on Material | Material Cost | Handling Cost |
|---|---|---|
| 5.67% | $ 346,987.00 | $ 19,674.16 |
| | Schedule C Total | $ 122,374.16 |

| Profit (Sch D) | | | Total Costs |
|---|---|---|---|
| 10% | | | $ 421,041.00 |
| | Schedule D Total | | $ 42,104.10 |

| Settlement Expenses (Sch E) | Rate | Hours | Cost |
|---|---|---|---|
| Administrative Support | $ 55.00 | $ 105 | $ 5,775.00 |
| Administrative Support | $ 25.00 | $ 125 | $ 3,125.00 |
| | Schedule E Total | | $ 8,900.00 |

| Settlements with Subcontractors (Sch F) | | Item | Cost |
|---|---|---|---|
| Teledyne Brown Engineering | | Labor | $ 18,873.00 |
| | | ODC | $ 2,061.00 |
| | | Fee | $ 36,792.00 |
| | Schedule F Total | | $ 57,726.00 |

**TOTAL SETTLEMENT COSTS** **$596,123.00**

# HAWK I
## CONTRACT DAAH01-00-C-0077
## DOCUMENTATION TIMELINE

| DATE | DOCUMENT | DESCRIPTION |
|---|---|---|
| 03 Mar 2000 | Letter | US SBA Acceptance of Project on behalf of SDC. |
| 13 Mar 2000 | Letter | SDC Proposal Response Rev B, letter of transmittal for the following: |
| | Schedule | Total Contract Pricing |
| | Schedule | Minimum Quantity Pricing |
| 31 Mar 2000 | Memo | DCMC Memorandum for AMCOM. Review of proposed material costs on Solicitation DAAH01-00-R-0013 |
| 04 Apr 2000 | Letter | SDC Proposal Response Rev C, letter of transmittal for the following: |
| | Schedule | Known Quantity Pricing |
| | Schedule | Total Contract Pricing |
| | Schedule | Direct Material Costs |
| 25 Apr 2000 | Letter | SDC Letter of Minimum Buy Impact |
| 26 Apr 2000 | Fax | Government Bottom Line Counter Offer |
| 03 May 2000 | Fax | Government acknowledgement and restructure of CLINs |

356

| | | |
|---|---|---|
| 03 May 2000 | Letter | SDC letter accepting Bottom Line Counter Offer and Known Quantity Pricing |
| 05 May 2000 | Fax | Government Rejection of one-time minimum buy and counter offer for HAWK IA |
| 10 May 2000 | Fax | Government advance copy of Contract DAAH01-00-C-0077 Signature page and Schedule pages |
| 22 Jun 2000 | Letter | SDC letter requesting confirmation of whether or not items are flight hardware |
| 30 Jun 2000 | Letter | SDC letter requesting GERBER data for raw board, MYLAR and existing unit |
| 17 Jul 2000 | Letter | SDC letter recommending alternate parts and request for GERBER data |
| 12 Jul 2000 | Mod | Government Modification P00001 to Contract DAAh01-00-C-0077 |
| 26 Jul 2000 | Letter | SDC letter requesting MYLAR artwork, Digital Data, and Existing Circuit Card Assembly |
| 22 Sep 2000 | Letter | SDC letter notifying Government that Stable Base Drawings were inadequate and request for GERBER data |
| 09 Nov 2000 | Memo | SDC memorandum of phonecon with Ms. Georgia Walker wherein SFDC requested GERBER and Digital data, and contract modification. |
| 25 Oct 2000 | Email | SDC email to Government requesting digital data for PROMs |

357

SDC 1240

| | | |
|---|---|---|
| 26 Oct 2000 | Email | Government response to SDC email of 25 Oct. Government alleges that Digital data was on the TDP CD. |
| 20 Nov 2000 | Email | SDC request for a meeting |
| 27 Nov 2000 | Email | Government email notifying SDC that attempts are being made to get required digital data |
| 24 Jan 2001 | Memo | SDC memorandum of phone call to Joseph Tappel, Georgia Walker's supervisor. He will get with Branch Chief and get an answer on status of digital data. |
| | Memo | Government contract specialist, Ms. Georgia Walker, called to say she Is still trying to get the data we require |
| 29 Jan 2001 | Email | SDC email regarding 24 Jan 2001 phone call and use of alternate parts. |
| 30 Jan 2001 | Email | Government response to use of alternate parts |
| 21 Feb 2001 | Email | Government response to request to use alternate parts |
| 02 Mar 2001 | Email | SDC email to Government clarifying "alternate" parts. Should read "obsolete". |
| 13 Mar 2001 | Letter | SDC letter to Government identifying obsolete parts. |
| 22 March 2001 | Email | SDC email to Government adding part number to 13 Mar 2001 letter and requesting Digital data. |
| Undated | Memo | SDC memorandum to AMCOM Small Business Office requesting assistance With issues in Contract DAAH01-00-C-0077. |
| 23 April 2001 | Email | SDC revision of memorandum to Small Business Office |
| 09 Jul 2001 | Email | SDC email to Government listing options to resolve contract issues |

358

SDC 1241

| | | |
|---|---|---|
| 30 Jul2001 | Letter | SDC letter to Government recommending courses of action to resolve contract issues |
| 01 Aug 2001 | Email | SDC follow-up on 30 Jul 2001 letter to Government |
| 08 Aug 2001 | Email | SDC follow-up on 30 Jul 2001 letter to Government |
| 10 Oct 2001 | Email | SDC follow-up on 30 Jul 2001 letter to Government |
| 10 Oct 2001 | Email | Government email notifying SDC that new Contract Specialist, Ms. Carolyn Gay is attempting to resolve issues |
| 10 Oct 2001 | Email | Government response to SDC letter of 30 Jul 2001 |
| 31 Oct 2001 | Email | SDC email to Government regarding absence of Digital data in TDP |
| 31 Oct 2001 | Email | SDC email confirming receipt of Government voicemail and request to pick up digital data |
| 31 Oct 2001 | Email | Government email to SDC stating there IS NO DIGITAL DATA. Only hard copy (paper) is available |
| 06 Nov 2001 | Email | SDC email notifying Government that SDC wants to pick up paper data and meet with Government |
| 07 Nov 2001 | Email | Government email notifying SDC that Ms. Janet Guyette is the new Contract Specialist, procedures to pick up paper data, and issues to be discussed in meeting proposed by SDC in 6 Nov 2001 email to Government |
| 13 Nov 2001 | Letter | SDC letter to Government identifying deficiencies in TDP |
| 14 Nov 2001 | Letter | Government letter denying SDC's request for Progress Payment |
| 03 Dec 2001 | Letter | SDC identification of issues to be discussed in meeting with Government on 23 Jan 2002 |

359

SDC 1242

| | | |
|---|---|---|
| 24 Jan 2002 | Email | SDC (TBE) technical summary of meeting with Government of 23 Jan 2002 |
| 24 Jan 2002 | Email | SDC email to Government requesting list of attendees |
| 25 Jan 2002 | Email | Government's list of attendees |
| 14 Feb 2002 | Letter | Government draft of letter of 23 Jan meeting and resolved issues |
| 19 Feb 2002 | Email | SDC (TBE) technical review of Jerry Hill letter |
| 20 Feb 2002 | Letter | SDC response to Government DRAFT letter of 23 Jan 2002 meeting |
| 05 Mar 2002 | Letter | Government letter of 23 Jan meeting and resolution of issues |
| 08 Apr 2002 | Receipt | SDC Temporary Hand Receipt for PROMs issued to Government for programming |
| 10 May 2002 | Email | Government attempt to test DAAD card |
| 27 Aug 2002 | Letter | Government letter of 21 Aug 02 on modification on contracts DAAH01-00-C-0077 and DAAH01-00-P-0741. Extends the delivery and schedule, in return for SDC waiver of ALL claims against the Government. |
| 06 Sep 2002 | Letter | SDC response to Government letter of 21 Aug 2002. |
| 06 Nov 2002 | Letter | Government letter of 6 Nov 02 on technical conferences. |
| 18 Nov 2002 | Letter | SDC response to Government letter of 6 Nov 02. |

360

SDC 1243